J. CHANDLER BARNARD *v.* EMILIE ELEANOR GODFREY.

[No. 70, January Term, 1929.]

*Decided April 17th, 1929.*

266

██ 

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Allan H. Fisher* and *Eugene P. Childs,* for the appellant.

*Nicholas H. Green,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

By decree dated September 13, 1928, the Circuit Court for Anne Arundel County, in equity, awarded to Emilie Eleanor Godfrey the custody, control and guardianship of Barbara Alice Barnard and J. Chandler Barnard, Jr., minor children of Emilie Eleanor Godfrey and J. Chandler Barnard, subject to the right of the father, J. Chandler Barnard, to visit them, to advise as to their care and education, and, as they advanced in years, to be consulted by the court as to his wishes in their education and the schools they should attend, provided he be able to aid financially in their education; that the said children should not be removed from the State of Maryland for a longer continuous period than three months without the consent of the court; that their father, J. Chandler Barnard, pay the sum of $200 monthly to the mother for the support of the minor children until they arrive at the age of twenty-one years, said payments to cease as to one-half thereof upon the death of either child before reaching the age of twenty-one years, and to cease as to one-half thereof upon the elder of the said children becoming twenty-one years of age; and that the court would fix the time when the father could visit the children, upon application by petition. It is from this decree that the appeal here is prosecuted; and the sole question presented for our review is whether or not such disposition of the children as to their guardianship, custody, and control, and the amount decreed to be paid for their support, is just and reasonable and most beneficial to the minor children.

The bill in this case was filed by the father under section 80 of article 16 of the Code, which provides: "The several equity courts of this state shall have original jurisdiction in all cases relating to the custody or guardianship of children and may on bill or petition filed by the father or mother or relative or next of kin or next friend of any child or children to direct who shall have the custody or guardianship of such child or children, and who shall be charged with his, her or their support and maintenance, and may from time to time thereafter annul, vary or modify its decree or order in relating to such child or children." From this language it will be seen that courts of equity in this state have full power, and it is their duty, to determine who shall have the custody, control and guardianship of minor children, and who shall be charged with their maintenance and support, when applied to by any of the persons mentioned in the statute; and this without regard to the question of whether or not the parents of said child or children have been divorced or are living apart. This section is declaratory of the inherent power of courts of equity over minors, and in the exercise thereof it should be exercised with the paramount purpose in view of securing the welfare and promoting the best interest of the children. In so doing it is proper to take into consideration the natural rights incident to the status of parent and child, regard being had for the character, habits and condition in life of the respective parents; but such consideration for the parents should not influence the court in the final disposition, if it would clearly not be for the best interests of the child; because even though, due to the parental status and the fact that the law imposes upon them the obligation to maintain and support their children, they have a natural right to the custody, control and companionship of the children, they nevertheless may forfeit this right by reason of their improper conduct, manner or habit of living, or by failure to provide surroundings conducive to the proper rearing and well-being of children of their station in life. There can be no binding, and very little helpful, precedent found in the decisions of the courts on this subject, because

essentially each case must depend upon its peculiar circumstances. Not only this, but circumstances which would require the custody and control in one person at the time the chancellor acts, may, and frequently do, so change as to necessitate a modification of the original decree; and such contingency the Legislature had in view when the statute provided that the court "may from time to time thereafter annul, vary or modify its decree or order in relating to such child or children."

The prayer of the plaintiff (appellant here), contained in the original bill, is that the court assume jurisdiction of the children and determine who should be charged with their support and maintenance, and who should have their custody and care; and in the supplemental bill the relief asked for was that J. Chandler Barnard, Jr., the son, be awarded to him, but be permitted to visit his mother six months without interruption in each and every calendar year, while the custody of the daughter, Barbara Alice Barnard, be awarded to the defendant, the mother, with the right of the father to have her visit him for a period of two months without interruption in each year; and that the plaintiff be required to pay the mother the sum of $100 monthly for the maintenance and support of the daughter.

There has been a very large mass of testimony taken in this case, presenting a record of approximately 750 pages, a large percentage of which can in no manner assist the court in arriving at a just and correct conclusion, but which entails an expense in the taking thereof and the preparation of the record for this court, which would be well-nigh prohibitive to persons of moderate means. The chancellor in his decree found occasion to comment upon this; and this court desires to caution future litigants in respect to the evil of such practice. It is true that, where testimony in equity cases is taken before examiners, as was done in this case, the lower court has no adequate means of excluding from the record much which has no proper place therein; but attorneys, in furtherance of the constitutional requirement placed upon this court to "promulgate by rules or orders, forms and modes of fram-

ing and filing bills, answers and other proceedings and pleadings in equity; and also forms and modes of taking and obtaining evidence, to be used in equity cases; and to revise and regulate, generally, the practice in the courts of equity of this state, so as to prevent delays, and to promote brevity and conciseness in all pleadings and proceedings therein, and to abolish all unnecessary costs and expenses attending the same," should be careful and alert in keeping out of the record irrelevant and immaterial matters, and this would be most beneficial to their clients in saving much of the expense incident to the trial of such cases in the courts below as well as in this court.

The plaintiff and defendant were married on June 12th, 1918; the marriage resulted in the birth of two children, both now living, a daughter, Barbara Alice Barnard, born July 28th, 1919, and a son, J. Chandler Barnard, Jr., born October 25th, 1920. Upon a bill filed by the defendant, the mother, the Court of Common Pleas of Montgomery County, Pennsylvania, on January 16th, 1924, awarded her an absolute divorce, but made no provision for the guardianship of the children and awarded no alimony. Prior to the granting of the divorce, the parties themselves entered into a written agreement as to the custody of the children, by the terms of which the mother was to have the custody of the daughter, and the father the custody of the son, and the father was to pay $100 per month to the mother for the support of the daughter during her minority. This agreement continued in effect until the 23rd day of January, 1926, when a second agreement was entered into by the parties, by which the custody of both children was given to the mother, and under the terms thereof the mother was to establish a home with the children in or near the city of Philadelphia, with the right of the father to visit the children four days in each week at reasonable hours as therein defined. The father agreed to pay the mother the sum of $325 per month, exclusive of rent or carrying charges on the home to be provided, for the maintenance and education of the two minor children, and the expense of maintaining said home, which payments

were to be abated or cease upon certain contingencies. It was further provided therein that the mother should not take the children outside of the limits of the State of Pennsylvania without the written consent of the father, and particularly that the mother should not permit the children to visit her mother, the grandmother of the children, for a greater period of time than forty-eight hours in every two weeks. Immediately after the divorce, and during the time under the first agreement the father had custody of the son, conflicts and disagreements occurred between the parties, resulting in a *habeas corpus* proceeding instituted by the mother, which was unsuccessful, owing to a lack of jurisdiction in the court. The second agreement referred to, by which the mother was given the custody of both children, was entered into with the expectation that the contentions and troubles between the parents might be obviated, and it is evident that it was made with the hope that the parents might remarry. The record establishes that the father did not comply with the terms of the second agreement, it being shown that he frequently visited the residence occupied by the mother and children at all hours of the night or day, frequently in a drunken condition, abused and threatened the mother to such an extent that police protection had to be secured, resulting in his arrest on more than one occasion; that the father's treatment was such as compelled the mother to take the children to her mother's and step-father's home in Annapolis, where they have been since such time, and were at the time of taking of the testimony and trial of this case; that subsequently to the mother's leaving Pennsylvania, the father had the mother indicted for larceny, alleging the theft of a set of bedroom furniture which he had given her during their married life, and of which charge the mother was promptly acquitted upon its coming to trial; that after coming to Maryland, and before the hearing of the case below, the mother remarried, her present husband being Lieutenant-Commander Vincent Godfrey of the United States Navy; and it was stated in the argument in this court that at that time the father had also remarried.

It is abundantly shown by the evidence that the condition and deportment of the two little children have strikingly improved since they have been in Annapolis and removed from the influence of and association with the father. In the supplemental bill the father, as we have shown, asked that the little girl be placed in the custody and control of the mother, yet his testimony, and that of all of the witnesses, is directed to an attempt to show that the mother is an unfit person to have the custody of children. Her unfitness is alleged to be the excessive use of intoxicating liquor. This attempt, in our opinion, signally failed; and on the contrary, the whole testimony of witnesses on both sides convinces us that the mother is diligent and attentive in looking after the needs of her children, and is devoted to them; the only evidence of use of intoxicating liquor by her being that on rare occasions she was known to take a cocktail before dinner, at which times her drinking even one cocktail seemed to have been at the insistance of the father. These children are now with their grandmother and step-grandfather, living within the Naval Academy grounds in Annapolis, and attending a private preparatory school conducted for the children of officers of the Navy residing in Annapolis; the mother at the present time being with her now husband in New Jersey, where they are renting a home, so as to enable her husband to take a post-graduate course at Columbia University. The apparent reason that the children are not with her is because of the preliminary injunction restraining her from removing them from the State of Maryland.

We find nothing in the voluminous testimony in the case which disentitles the mother to the custody of the children. Certainly giving her the custody at this time is more conducive to their happiness and best interest than giving the custody to any other person suggested. It is argued that the fact that the mother is now the wife of a naval officer, whose duties may prevent him from maintaining a permanent home for any long-continued time, unfits the mother as custodian of the children. The testimony, however, on this point is that the purpose of the mother and her husband is to purchase

and establish a permanent home in Anne Arundel County at a point convenient to both Annapolis and Washington. The situation is further safeguarded by the decree of the chancellor, which retains jurisdiction, and further provides that the children shall not be taken out of the state for a longer period than three months without the consent of the court. If a condition should arise in the future where it could be shown that the arrangement now provided for is inadequate or unsuitable, the same can and no doubt will be modified by the chancellor to meet such changed conditions as arise, keeping always in mind the welfare of the children. We are of the opinion that the father should be permitted to visit the children at such reasonable times and under such reasonable conditions as the court below may by its order direct. Neither do we see any objection to that part of the decree which permits the father to advise with the court as to the selection of schools in the education of the children, provided he is in a position to and does pay for their education. The requirement that the father pay $200 per month for the support of the children is, in our opinion, reasonable and proper, in view of the fact that the father's income at the present time is a minimum of $12,000 a year.

A recital and analysis of the testimony in this case is wholly unnecessary, in that no general principles can be laid down in this class of cases which would govern in the future, and such a recital could only have the effect of making a permanent record of charges, many of which are unproven, aspersing the character of the parents of two innocent children whose welfare such a proceeding is intended to safeguard and protect.

*Decree affirmed, with costs.*