MATTER OF WILLIAM ANDERSON, MICHAEL A. EPPS, LARRY SMITH AND DONALD BRADY

[No. 491, September Term, 1973.]

*Decided February 11, 1974.*

---

The cause was argued before ORTH, C. J., and MOYLAN and POWERS, JJ.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Howard B. Merker, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*Peter S. Smith* and *Herbert J. Hirsch,* with whom were *Michael S. Elder, Victoria A. Salner* and *Adrienne E. Volenik* on the brief, for appellees.

ORTH, C. J., delivered the opinion of the Court.

These appeals present two questions which are not only dispositive of the cases at hand but of substantial significance in the overall administration of juvenile justice. The first question concerns the right of the State to appeal in juvenile proceedings. The second question involves the application to such proceedings of the double jeopardy clause of Amendment V to the Constitution of the United States.

I

Petitions against WILLIAM ANDERSON, MICHAEL A. EPPS, LARRY SMITH and DONALD BRADY, appellees,[1] were filed in the Circuit Court of Baltimore City, Division for Juvenile Causes (Juvenile Court). Courts and Judicial Proceedings Article (hereinafter cited as "Courts Art.") §

---

1. On 7 August 1973 the State noted a consolidated appeal from orders of the Juvenile Court with respect to appellees and three other children, Willie Mark Anderson, Robert Cummings, and Marc N. Hawkins. On 13 December 1973 the State withdrew Willie Mark Anderson, Cummings and Hawkins from the appeal.

34

3-803 (b). See Maryland Rules 901-905. The parties have stipulated what thereafter occurred: [2]

"On May 12, 1972, the case of State of Maryland v. William Anderson, Petition no. 158187, was called for an adjudicatory hearing before Master Theodore Hayes in the Circuit Court of Baltimore City, Division for Juvenile Causes. At the adjudicatory hearing testimony was presented by the State of Maryland and by William Anderson. At the conclusion of testimony, Master Hayes announced a finding that, based on the evidence before the Court, respondent William Anderson was not delinquent, and submitted a written recommendation to the Honorable Robert I. H. Hammerman, Judge, Circuit Court of Baltimore City, Division for Juvenile Causes, that an order be entered dismissing the juvenile petition."

"On May 16, 1973, the case of State of Maryland v. Michael A. Epps, Petition no. 004617, was called for an adjudicatory hearing before Master Paul A. Smith, Jr. in the Circuit Court of Baltimore City, Division for Juvenile Causes. At the adjudicatory hearing testimony was presented by the State of Maryland and by Michael A. Epps. At the conclusion of testimony, Master Smith announced a finding that, based on the evidence before the Court, respondent Michael A. Epps was not delinquent, and submitted a written recommendation to the Honorable Robert I. H. Hammerman, Judge, Circuit Court of Baltimore City, Division for Juvenile Causes, that an order be entered dismissing the juvenile petition."

"On June 20, 1973, the case of State of Maryland v. Larry Smith, Petition no. 003285, was called for an adjudicatory hearing before Master Paul A. Smith, Jr., in the Circuit Court of Baltimore City, Division for Juvenile Causes. The hearing was recessed on that date prior to completion until June 27, 1973, and was recessed again prior to completion until July 18, 1973 at which time it was completed. At the adjudicatory hearing testimony was presented by the State

---

2. On 14 December 1973, by order of this Court upon joint motion of the parties, the stipulation was included in the record before us.

of Maryland and by Larry Smith. At the conclusion of testimony, Master Smith announced a finding that, based on the evidence before the Court, respondent Larry Smith was not delinquent, and submitted a written recommendation to the Honorable Robert I. H. Hammerman, Judge, Circuit Court of Baltimore City, Division for Juvenile Causes, that an order be entered dismissing the juvenile petition."

"On January 25, 1973, the case of State of Maryland v. Donald Brady, Petition no. 000471, was called for an adjudicatory hearing before Master Bernard Peter, in the Circuit Court of Baltimore City, Division for Juvenile Causes. At the adjudicatory hearing testimony was presented by the State of Maryland. At the conclusion of the State's case, counsel for Donald Brady moved to dismiss the petition on the ground that the State's evidence did not constitute a prima facie case. Master Peter granted the motion and submitted a written recommendation to the Honorable Robert I. H. Hammerman, Judge Circuit Court of Baltimore City, Division for Juvenile Causes that an order be entered dismissing the juvenile petition." [3]

On 16 May 1972 the State filed written exceptions to the master's finding that the evidence was not sufficient to sustain the charge against Anderson and his recommendation that the case be dismissed.[4] On 26 September Anderson filed a motion to dismiss the exceptions. The crux of the motion was that an adjudicatory hearing before the judge of the juvenile court would put him twice in jeopardy on the matter of his delinquency. He urged

---

[3]. Rule 908 e 1 provides: "The Master shall hear such cases as may be assigned to him by the court and upon the conclusion of the hearing shall announce his findings and recommendations. All papers relating to the case together with the master's findings and recommendations shall then be transmitted to the judge."

[4]. Rule 908 e 2 provides: "The petitioner or any party may file written exceptions to the master's findings or recommendations or any part thereof within five (5) days after the hearing. Exceptions by a petitioner after a delinquency hearing may only be taken by the State's attorney. The clerk designated by the court, upon the filing of such exceptions, shall notify the petitioner and all parties of the time and place of the hearing before the judge."

Rule 908 e 3 provides, in relevant part: "If, within the specified time, exceptions are filed, the judge shall hear the entire matter or such specific matters as set forth in the exceptions de novo."

that the finding of the master be final. According to the docket entries in Matter of Anderson, Docket No. 158187, on 13 October there was an "Exception Hearing on Motion to Dismiss" before Hammerman, J., presiding in the Juvenile Court.[5] Ruling on the motion was held *sub curia*. Memoranda were filed by the parties. There were further hearings on 27 March 1973 and 17 May. On 29 June stipulations of fact were filed and on 1 August the court granted the motion to dismiss the exceptions, and confirmed the recommendation of the master to dismiss the petition.

The State filed exceptions to the findings and recommendation of the master as to Brady on 26 January 1973, as to Epps on 16 May 1973, and as to Smith on 20 July 1973. In each case a motion to dismiss the exceptions was filed, and in each case, following its holding as to Anderson, the court entered an order on 3 August 1973 dismissing the exceptions and confirming the recommendation of the master to dismiss the petition filed against the child.[6] On 7 August the State filed a "Consolidated Appeal" from the order of 1 August as to Anderson and from the orders of 3 August as to Brady, Epps and Smith.[7]

## II

"The right to take an appeal is entirely statutory, and no person or agency may prosecute an appeal unless the right is given by statute." *Subsequent Injury Fund v. Pack,* 250 Md. 306, 309; *State v. Lohss,* 19 Md. App. 489.[8] Prior to 1 January 1974 the right to appeal in juvenile proceedings was set out in Code, Art. 26, § 70-25, under the subtitle "Juvenile

---

5. By Courts Art. § 3-803 (b) the Supreme Bench of Baltimore City shall assign one or more judges of the Bench to exercise jurisdiction in juvenile causes.

6. Rule 908 e 3 also provides: "In the absence of exceptions, the master's findings and recommendations shall promptly be confirmed, modified or remanded by the judge." Each order confirming the recommendation of the master was expressly under the authority of this Rule. Technically, the dismissal of the exceptions would take the matter out of that part of Rule 908 e 3 requiring a hearing *de novo* when exceptions are filed, see note 4, *supra,* and put it within the ambit of that part of the Rule prescribing what is to be done in the absence of exceptions.

7. See note 1, *supra.*

Causes": "An aggrieved party may appeal from any final order, judgment, or decree of the juvenile court to the Court of Special Appeals in the manner prescribed by the Maryland Rules." In *Matter of Waters*, 13 Md. App. 95, footnote 6, at 99, and in *Aye v. State*, 17 Md. App. 32, footnote 5, at 36, we suggested by way of *obiter dictum* that the State had no right of an appeal from a determination of a juvenile court not to waive its jurisdiction. The primary basis of this conclusion was that under Code, Art. 26, § 70-16 (c) as then in effect, only "an order of waiver" was to be considered a final order, terminating the jurisdiction of the juvenile court. If jurisdiction was not waived, the juvenile court, of course, retained its jurisdiction, and the case proceeded under juvenile procedures. Thus, an order refusing to waive jurisdiction was interlocutory. But we also indicated, and this is what appellees seize upon, that because the definition of "party" in the juvenile cause subtitle, Art. 26, § 70-1 (e), did not include the State, the right of "an aggrieved party" to appeal, did not encompass the State.

Since our *dictum* in *Waters* and *Aye*, we have been afforded a new insight into the legislative intent concerning appeals in juvenile causes. Chapter 2, Acts 1973, First Extraordinary Session of the General Assembly of Maryland, repealed the provisions of the Annotated Code of Maryland dealing with courts and the judiciary and re-enacted them with revisions to be codified as the Courts and Judicial Proceedings Article.[9] This was a result of the Governor's establishment of a Commission to Revise the Annotated Code. The Governor charged the Commission with the responsibility of a formal revision of the public general laws, including an improved scheme of organization, elimination of obsolete or unconstitutional provisions, resolution of inconsistencies and conflicts in the laws, and

8. Although there is no constitutional right to appeal, when authorization is given by the Legislature it must be in such manner as does not offend the constitutional guarantees of equal protection and due process of the laws. *Griffin v. Illinois*, 351 U. S. 12, 18; *Matter of Trader*, 20 Md. App. 1.

9. For the effective date of the Act, see § 18 of ch. 2.

the general improvement of language and expression. The laws as re-enacted made, in large measure, only stylistic revisions, and those in which substance appears were, in general, not changes of a major nature.[10] Among the statutes repealed and re-enacted were those involving juvenile causes. Statutes concerning juvenile causes now appear in subtitle 8 of the Courts and Judicial Proceedings Article.

The right to appeal in juvenile proceedings no longer appears as a separate section in the Juvenile Causes subtitle; it is now § 12-301, "Appeals from Final Judgments", subtitle 3, "Review of Decisions of Trial Courts of General Jurisdiction", Title 12, "Appeals, Certiorari, and Certification of Questions". The section reads:

> "Except as provided in § 12-302, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition of execution of sentence has been suspended." [11]

---

**10.** Report No. 3 F of the Annotated Code Commission explained, p. 3: "The basic thrust of the Commission's work has to do with formal and not substantive changes. Nevertheless, at some points in its work, the Commission has found it necessary to make recommendations which do involve the substance of the laws. In a sense, the elimination of an obsolete provision is a substantive change. Also, where the Commission has uncovered inconsistencies or gaps in the laws, it has sometimes made substantive recommendations in an effort to rectify the situation. This follows the Governor's directive to eliminate inconsistencies and conflicts.

In every such case, the revisor's notes following the particular section explain the change and the reason for it. Changes of this kind are also noted in this report." See also *Revisor's Manual*, 2d Ed. — November 1973.

**11.** Section 12-302 designates exceptions to the right to appeal bestowed by § 12-301. Subsection (a) denies appeal from a final judgment of a court made in the exercise of appellate jurisdiction in reviewing the decision of the District Court, an administrative agency, or a local legislative body, unless expressly granted by law. Subsection (b) declares that § 12-301 does not apply to appeals in contempt cases, which are governed by §§ 12-304 and 12-403. Subsection (c) prescribes that in a criminal case, the State may appeal only from a final judgment granting a motion to dismiss or quashing

We find it clear from the discussion of § 12-301 in the Commission's Report No. 3 F, pp. 77-78, and the revisor's note to the section, that the only substantive change intended from the law as it formerly existed was to allow an appeal from a trial court's exercise of special statutory original jurisdiction, as opposed to common-law original jurisdiction, which appeal, by case law, was previously denied in the absence of express statutory authority. This substantive change did not affect the appeal in juvenile causes because under Code, Art. 26, § 70-25, there existed before the enactment of Courts Art. § 12-301 the right of appeal from a final judgment of a circuit court in the exercise of its special statutory jurisdiction over juvenile causes. We believe that the Commission in proposing § 12-301, and the Legislature in enacting it, intended no departure from the law concerning appeals in juvenile causes as it previously existed.[12] It follows, therefore, that § 12-301 reflects what Art. 26, § 70-25 provided, the change in language, style and scheme of organization serving merely to clarify as to juvenile causes, the right to appeal. The Court of Appeals said in *Welch v. Humphrey*, 200 Md. 410, 417:

> "It is true that a codification of previously enacted legislation, eliminating repealed laws and systematically arranging the laws by subject matter, becomes an official Code when adopted by the Legislature, and, since it constitutes the latest expression of the legislative will, it controls over all previous expressions on the subject, if the Legislature so provides. However, the principal function of a Code is to reorganize the statutes and

---

or dismissing an indictment, information, presentment, or inquisition in a criminal case. Subsection (d) concerns appeals from the decision of judges of a circuit court sitting in banc.

"Final judgment" is defined in § 12-101 (f) as meaning "a judgment, decree, sentence, order, determination, decision, or other action by a court including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken." The revisor's note explains that the definition does not attempt to specify what is an appealable order. "That is left to case law, as at present." It is patent that the challenged orders, terminating the cases in the juvenile court, were final judgments.

, **12.** The revisor's note to § 12-301 states that the approach taken enabled the repeal of Art. 26, § 70-25.

state them in simpler form. Consequently any
changes made in them by a Code are presumed to
be for the purpose of clarity rather than change of
meaning. Therefore, even a change in the
phraseology of a statute by a codification thereof
will not ordinarily modify the law, unless the
change is so radical and material that the intention
of the Legislature to modify the law appears
unmistakably from the language of the Code.
*Welsh v. Kuntz,* 196 Md. 86, 97, 75 A. 2d 343, 347."

Thus we can ascertain what former Art. 26, § 70-25 meant
by what Courts Art. § 12-301 provides.

By providing that "a party may appeal from a final
judgment entered in a civil * * * case [13] by a circuit court",
§ 12-301 includes a court within the meaning of the Juvenile
Causes subtitle. Courts Art. § 3-801, subsections (h) (1) and
(h) (2) define court as a circuit court for a county sitting as a
juvenile court (except the circuit court for Montgomery
County), and the Circuit Court of Baltimore City sitting as a
juvenile court. By providing that the right of appeal exists
from a final judgment entered by a court in the exercise of
"original, special, limited, statutory jurisdiction", § 12-301 is
applicable to a circuit court, with the Montgomery County
exception, exercising jurisdiction over juvenile causes. There
being no limitation on the meaning of "party", and the State
as a party in juvenile causes not being within the exceptions
designated in § 12-302, the State may appeal from a final
judgment entered in a juvenile case by a circuit court. As
this was the clear legislative intent in enacting § 12-301, it
was the intent of Art. 26, § 70-25. In the light of § 12-301, we
recant our dictum in *Waters* and *Aye* that the right of an
aggrieved party to appeal in juvenile causes does not
encompass the State.

We hold that the State had the right to appeal from the
orders dismissing the charges against the appellees. The
motion to dismiss the appeal is denied.

---

**13.** In the frame of reference of appeals from final judgments, a ju-
venile case is clearly a civil case. See *Matter of Davis,* 17 Md. App.
98; *Matter of Nawrocki,* 15 Md. App. 252; *In Re Hamill,* 10 Md.
App. 586.

### III

The threshold question presented on the merits of this consolidated appeal is whether juvenile delinquency proceedings as conducted in Maryland are within the ambit of the double jeopardy clause of the Fifth Amendment to the Constitution of the United States.[14] If they are, we must then determine whether the court below erred in applying the double jeopardy clause to dismiss the petitions filed against the appellees.

The Supreme Court has established that a juvenile hearing must measure up to the essentials of due process and fair treatment, insisting, in decisions to that end, that they do not "spell the doom of the juvenile court system or even deprive it of its 'informality, flexibility, or speed.' " *McKeiver v. Pennsylvania,* 403 U. S. 528, 534.[15] The Court refused to equate a juvenile proceeding, even the adjudicative phase of it, with a criminal trial. It observed: "If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence." [16] *Id.* at 551. Thus, it has not said that *all* rights constitutionally assured to the

---

**14.** "* * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *." It applies to the States through the Fourteenth Amendment. *Benton v. Maryland,* 395 U. S. 784, 787.

**15.** There was no majority opinion in *McKeiver,* which decided two cases, No. 322, *McKeiver v. Pennsylvania* and No. 128, *In re Burrus,* but there was a majority joining in the judgment of the Court. Mr. Justice Blackmun announced the judgments of the Court and delivered an opinion in which the Chief Justice, Mr. Justice Stewart, and Mr. Justice White joined. Mr. Justice White also filed a concurring opinion. Mr. Justice Harlan concurred in the judgments and filed an opinion. Mr. Justice Brennan concurred in the judgment in case No. 322, dissented in case No. 128, and filed an opinion. Mr. Justice Douglas, with whom Mr. Justice Black and Mr. Justice Marshall concurred, dissented and filed an opinion. References hereinafter to the Court or the Court's opinion in *McKeiver,* are to the Blackmun opinion unless otherwise designated.

**16.** The Court explained: "Concern about the inapplicability of the exclusionary and other rules of evidence, about the juvenile court judge's possible awareness of the juvenile's prior record and of the contents of the social file; about repeated appearances of the same familiar witnesses in the persons of juvenile and probation officers and social workers — all to the effect that this will create the likelihood of pre-judgment — chooses to ignore, it seems to us, every aspect of fairness, of concern, of sympathy, and of paternal attention that the juvenile court system contemplates." 403 U. S. at 550.

adult accused of crime also are to be enforced or made available to the juvenile in his delinquency proceeding.[17] But it has held that some of the constitutional requirements attendant upon the state criminal trial have equal application to that part of the state juvenile proceeding that is adjudicative in nature. *McKeiver* points to six cases that make this apparent — *Haley v. Ohio*, 332 U. S. 596; *Gallegos v. Colorado*, 370 U. S. 49; *Kent v. United States*, 383 U. S. 541; *In re Gault*, 387 U. S. 1; *DeBacker v. Brainard*, 396 U. S. 28; *In re Winship*, 397 U. S. 358. It spells out some of the constitutional requirements which apply equally to a state criminal trial and a state adjudicative proceeding — the right to appropriate notice, to counsel, to confrontation and to cross-examination, and the privilege against self-incrimination. Included also is the standard of proof beyond a reasonable doubt.[18] On the other hand, the holding in *McKeiver* was that "Trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." 403 U. S. at 545.

---

**17.** On the contrary, the Court specifically refrained from going that far. It said: "We do not mean * * * to indicate that the hearing * * * must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; * * *" *Kent v. United States*, 383 U. S. 541, 562.

**18.** The constitutional rights so designated are expressly required in juvenile delinquency hearings at the adjudicative stage by Maryland law. The summons to a respondent in a juvenile petition shall give notice of the time and place of hearing and its purpose. Rule 906 c 2. A party is entitled to representation by legal counsel at any stage of any juvenile proceeding. Courts Art. § 3-830 (d); Rule 918. The Clerk shall issue a summons for each witness requested by each party, Rule 906 d. There are prohibitions against the use of certain information and statements. Courts Art. § 3-820. See § 3-834. "A child may remain silent as of right during an adjudicatory hearing on an allegation of delinquency and shall be so advised." Rule 917. "Before a child is adjudicated delinquent, the allegation in the petition must be proved beyond a reasonable doubt. An uncorroborated confession made by a child out of court is not sufficient proof of delinquency." Courts Art. § 3-830 (a). We follow the Supreme Court with respect to right to trial by jury. "Hearings shall be conducted by the court without a jury." Rule 908 a. Maryland goes further than the Supreme Court in protecting a juvenile as to the nature of evidence in delinquency hearings. "The rules of evidence applicable to criminal cases shall apply to delinquency hearings." Rule 912 c. And although the Supreme Court has refrained from deciding whether a State must provide appellate review in juvenile cases or a transcript or recording of the hearings, Maryland provides for appellate review, Courts Art. § 12-301 (see *supra*), and "[u]nless waived by counsel or the parties and approved by the court, proceedings before a judge shall be recorded by stenographic notes or by electronic, mechanical or other appropriate means," Rule 908 a.

Thus, it is clear that the juvenile court proceeding has not yet been held by the Supreme Court to be a "criminal prosecution" and also has not yet been regarded as devoid of criminal aspects merely because it has been given the civil label. *McKeiver*, 403 U. S., at 541; *Kent*, 383 U. S., at 554; *Gault*, 387 U. S., at 17; *Winship*, 397 U. S., at 365-366. "Little, indeed, is to be gained by any attempt simplistically to call the juvenile court proceeding either 'civil' or 'criminal'. The Court carefully has avoided this wooden approach." *McKeiver*, 403 U. S., at 541. The Supreme Court has not said whether the double jeopardy clause of the Fifth Amendment applies to state juvenile proceedings, and if we had need of determining now whether the double jeopardy clause attaches to a juvenile adjudicative hearing our task would be "to ascertain the precise impact of the due process requirement", as was the task of the Supreme Court with respect to trial by jury in *McKeiver* and in *Gault* with respect to other claimed rights. *Idem.* See *Gault*, 387 U. S., at 13-14.[19] For the purpose of decision in this case only, however, and explicitly without determining the point, we assume that juvenile delinquency proceedings as conducted

---

**19.** Prior to *Benton v. Maryland, supra,* in this State protection against double jeopardy was available by way of the common law, there being no clause in the Maryland Constitution prohibiting it. *Greathouse v. State,* 5 Md. App. 675, 688-689. For the meaning of common law double jeopardy see *Hoffman v. State,* 20 Md. 425, 434 and *Boone v. State,* 3 Md. App. 11. In *Moquin v. State,* 216 Md. 524, the issue was whether a juvenile court proceeding placed a child in jeopardy in the common law sense of the phrase. The court found that "* * * the rule of double jeopardy is applicable only when the first prosecution involves a trial before a criminal court or at least a court empowered to impose punishment by way of fine, imprisonment or otherwise as a deterrent to the commission of crime." At 528. The court concluded that the proceedings in juvenile court did not place a child in jeopardy on the rationale that the juvenile act does not contemplate punishment of children found to be delinquent but contemplates an attempt to correct and rehabilitate. *Idem.* We followed this lead in *Johnson v. State,* 3 Md. App. 105, 109-113. Of course, "to remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior," and "to provide for a program of treatment, training, and rehabilitation consistent with the protection of the public interest," Courts Art. § 3-802 (a) (2) and (3), are declared purposes of the juvenile law. And see the other purposes as spelled out in subsections (a) (1), (4 ), and (5) of § 3-802. But under *Benton* double jeopardy must be applied in accordance with the Supreme Court's constitutional constructions and interpretations from time to time of the Fifth Amendment clause. *Baker v. State,* 15 Md. App. 73, 77. Whether the *Moquin* rationale is still viable is questionable.

in Maryland are within the ambit of the double jeopardy clause of the federal constitution, and, on that assumption, address ourselves to the propriety of the action of the juvenile court.

## IV

The general law provides: "After a petition has been filed and unless jurisdiction has been waived, the court shall hold an adjudicatory hearing." Courts Art. § 3-829 (a). The Maryland Rules make provision for the scheduling of the adjudicatory hearing, Rule 912 a, call for the State's Attorney to prepare and present the testimony in behalf of the petitioner in a delinquency case, unless excused by the court, Rule 912 b, require the court upon conclusion of the hearing to make and file a brief statement of the grounds upon which it bases its determination, Rule 912 d 1, and, limit continued detention of the child if a dispositional hearing is not held immediately after adjudication, Rule 912 d 2.

Courts Art. § 2-501 (a) authorizes the judges of the circuit court for a county, or the Supreme Bench of Baltimore City to employ masters.[20] Subsection (b) of the section provides that each employee of the court shall perform the duties directed by the judge. There is no specific authority in the general law for a master to conduct a hearing, nor does Rule 912, which concerns "The Adjudicatory Hearing", refer to a master. Rule 913, however, entitled "Disposition Hearing", prescribes in § a 1 that "The judge or master who presided at the adjudicatory hearing shall, wherever possible, preside at the disposition hearing." The authority for a master to

---

**20.** The former law, Code, Art. 26, § 69, read, in relevant part: "Any judge or judges of any of the eight judicial circuits who otherwise have no power to appoint a master or masters in chancery may appoint a master or masters in chancery for the purposes of this subtitle (Juvenile Causes). * * * Any master in chancery shall perform his duties under the supervision of the judge or judges who appointed him and in accordance with the rules and procedures of that court."

By resolution of the Supreme Bench of Baltimore City, adopted 31 October 1969, Supreme Bench Rules 901-919, inclusive, relating to Juvenile Causes were rescinded as superseded by Chapter 900 of the Maryland Rules.

conduct an adjudicatory hearing is in Rule 908, dealing with "Hearings — Generally", under § e, entitled "Masters". Subsection 1 of § e, bearing the heading "Hearing Before Master" provides:

> "The master shall hear such cases as may be assigned to him by the court and upon the conclusion of the hearing shall announce his findings and recommendations. All papers relating to the case together with the master's findings and recommendations shall then be transmitted to the judge."

The Rule continues, subsection 2:

> "The petitioner or any party may file written exceptions to the master's findings or recommendations or any part thereof within five (5) days after the hearing. Exceptions by a petitioner after a delinquency hearing may only be taken by the State's attorney. The clerk designated by the court, upon the filing of such exceptions, shall notify the petitioner and all parties of the time and place of the hearing before the judge."

Subsection 3 concerns the order of the judge:

> "In the absence of exceptions, the master's findings and recommendations shall promptly be confirmed, modified or remanded by the judge. If, within the specified time, exceptions are filed, the judge shall hear the entire matter or such specific matters as set forth in the exceptions *de novo*."

It is the requirement that the judge hear the matter *de novo* upon filing of exceptions which focusses the double jeopardy issue in the cases before us.

As we have indicated, the petition alleging that Anderson was a delinquent child was assigned by the juvenile judge for hearing before a master. The master reported under date of 12 May 1972 that the Anderson case was "assigned for hearing before me and hearing was held this date. The

evidence was not sufficient to sustain the charge. It is recommended that the cases be dismissed." The report was endorsed "Approved: and so ordered" by the juvenile judge the same date. On 16 May the State filed exceptions dated 15 May to the finding of the master and requested the matter be set for hearing before the juvenile judge pursuant to Rule 908 e 2. On 26 September Anderson moved to dismiss the exceptions giving as his primary reason that Rules 908 e 2 and 908 e 3 were unconstitutional as offensive to the double jeopardy clause of the federal constitution. After the series of hearings we have above described, the juvenile judge concluded that "jeopardy attaches at the outset of a Master's adjudicatory hearing and that such a hearing which concludes with a finding of the charge not sustained and recommendation for dismissal, has come so close to the point of actual finality that for the purposes of the constitutional guarantee [against double jeopardy] it must be considered as a final adjudication." [21] We do not see it that way. We believe the juvenile judge was entirely wrong in his concept and application of the double jeopardy clause.

The obvious and inescapable effect of the holding of the juvenile judge is to raise the position of a master to the status of a judge of the circuit court and to emasculate the juvenile judge, whose employee the master is, leaving the judge with no control over the master's findings and with no part to play but to give *pro forma* endorsement to the master's recommendations. Such delegation of the judge's duties and authority is of a certainty invalid and patently beyond the contemplation of Art. IV of the Maryland Constitution, of the Legislature in authorizing the employment of masters and "other employees necessary to conduct the business of the court", Courts Art. § 2-501 (a), and of the Court of Appeals in adopting the Rules of Practice and Procedure concerning masters, Rule 908 e. It is clear that the authority of the master in conducting such hearings

---

**21.** It was the stated "clear view" of the judge that "the new and unique situations must make for a newer definition and newer dimensions of double jeopardy." The Supreme Court, however, has not as yet gone beyond its views as expressed in *Benton v. Maryland, supra,* which do not compel or support the "clear view" of the juvenile judge here.

as the court assigns to him extends only to findings and recommendations. It was not intended that the master assume the duties of a judge by being cloaked with judicial power and authority, but that he assist the judge, as an employee of the court. At the conclusion of the hearing the master must transmit all papers relating to the case to the judge. Rule 908 e 1. Even in the absence of exceptions the judge need not confirm the master's findings and recommendations, but may modify them or remand them. Rule 908 e 3. And there is no doubt whatsoever that when exceptions are properly made to the master's findings and recommendations, Rule 908 e 2, the judge must hear the matter *de novo*, Rule 908 e 3. Even if jeopardy attaches at the beginning of the adjudicatory hearing before a master on a charge of delinquency, as we are assuming for the purpose of decision, there is no adjudication by reason of the master's findings and recommendations.[22] The proceedings before the master and his findings and recommendations are simply the first phase of the hearing which continues with the consideration by the juvenile judge. Whether the juvenile judge, in the absence of exceptions, accepts the master's findings or recommendations, modifies them or remands them, or whether, when exceptions are filed, he hears the matter himself *de novo*, there is merely a continuance of the hearing and the initial jeopardy. In other words, *the hearing*, and the jeopardy thereto attaching, terminate only upon a valid adjudication by the juvenile judge, not upon the findings and recommendations of the master. Therefore, the action of the juvenile judge, which is an essential requirement of the original hearing, does not put the child twice in jeopardy because there has been no culmination of the first jeopardy.[23] We conclude that Rule

---

**22.** We observe that proceedings before a master are not required to be recorded as they are before a judge. See Rule 908 a.

**23.** The termination of a criminal trial by the declaration of a mistrial is nowise comparable because the court in a criminal trial, unlike the master in a juvenile cause, has power to adjudicate the case, the general rule being that an accused has the right to have his fate decided by the same trier of fact before whom his trial commenced. A master does not have the power to decide the fate of a juvenile. The law relating to double jeopardy and

908 e, permitting the State to except to a master's finding that a child is not delinquent, and requiring a hearing before the juvenile judge, does not violate the double jeopardy clause of the Fifth Amendment to the Constitution of the United States.

## V

The "Notice of Exceptions" filed in the Anderson case were signed by an "Assistant State's Attorney." Rule 908 e 2 includes the provision: "Exceptions by a petitioner after a delinquency hearing may only be taken by the State's attorney." Anderson contends that because the Notice of Exceptions here was executed by an Assistant State's Attorney, the Rule was not followed, requiring dismissal of the exceptions. The juvenile judge, although noting it was unnecessary to meet this point in view of his ruling on the primary issue, found the arguments in support thereof "to be unpersuasive and without merit." With this we are in full accord.

Rule 908 e 2 provides that the petitioner or any party may file written exceptions, and then limits the taking of exceptions by the petitioner after a delinquency hearing to the State's attorney. We think the use of the word "only" with reference to the limitation was to avoid any possible misinterpretation and assure that a petitioner in such case shall not take the exceptions. We believe it patent that "only" was not intended to mean, as Anderson would like it to mean, that the State's Attorney personally, as distinguished from his deputies or assistants, must take the exceptions. We note that there is reference to the State's attorney throughout the Rules. For example, if the intake

---

mistrials is simply not apposite. See *Baker v. State*, 15 Md. App. 73; *Jones v. State*, 17 Md. App. 504.

We are constrained to observe that if the conclusions of the judge below were indeed correct, the result would not be that a master's findings and recommendations were conclusive, the judge being merely a rubber stamp to indicate approval, but that juvenile delinquency hearings before a master were improper, requiring that all such hearings in the first instance be before the juvenile judge. The stipulation of facts in the record submitted to us shows that this would place an intolerable burden on judges now assigned to hear juvenile causes, especially in Baltimore City.

officer refuses to authorize the filing of a petition, the complainant may submit such complaint for review to the State's attorney. Rule 901 f 2. See Courts Art. § 3-812 (a). "A petition alleging delinquency shall be prepared by the State's attorney." Rule 903 d. If a respondent over 18 years of age charged with a wilful act or omission causing a child to be adjudicated neglected, delinquent, or in need of supervision, waives trial in the criminal court, trial in the juvenile court shall be prosecuted by the State's attorney. Rule 910. Waiver of juvenile jurisdiction over a child shall be initiated by the State's attorney. Rule 911 a. In a delinquency case, the State's attorney shall prepare and present the testimony in behalf of the petitioner unless excused by the court. Rule 912 b. To construe these Rules to mean that the State's Attorney alone may take the action prescribed is absurd. We think it evident, as we have stated in *State v. Aquilla,* 18 Md. App. 487, 493-494, that a State's Attorney generally may assign to his deputies and assistants the performance, subject to his discretion and control, of the duties required of him by law. See Constitution of Maryland, Art. V, §§ 7 and 9; Code, Art. 10, § 34. *Qui facit per alium facit per se.*[24]

We hold that the exceptions to the findings and recommendations of the master were properly taken.

## VI

In case no. 158187 below, we hold that the juvenile court erred in granting the motion of Anderson to dismiss the exceptions filed by the State on 16 May 1972 to the master's finding and recommendation of 12 May 1972. The order of 12 May 1972 approving the finding and recommendation of the

---

**24.** We note that Rule 908 e 2 designates the "State's attorney", not the State's Attorney". The attorney for the State may be construed to include Assistant State's Attorneys and Deputy State's Attorneys as well as the State's Attorney. Compare Code, Art. 27, § 125A-C and Art. 35, § 94, concerning wiretapping and electronic devices, as to which, in the light of the federal wiretapping act, 18 U.S.C. §§ 2510-2520, we have construed Attorney General and State's attorney to mean in the frame of reference of those statutes, the principal prosecuting attorney of the State and the principal prosecuting attorney of any political subdivision thereof. *State v. Siegel,* 13 Md. App. 444, affirmed, 266 Md. 256.

master is vacated as entered before the time for exception thereto had expired. The order of 1 August 1973 granting Anderson's motion to dismiss the exceptions is vacated. The case is remanded with direction to the juvenile judge to hear the petition filed against Anderson *de novo*.

In each of cases no. 004617 as to Epps, no. 003285 as to Smith, and no. 000471 as to Brady, the order entered therein, issued the date of the master's report, approving the finding and recommendation of the master, is vacated. In each case, there was a motion by the respondent, "pursuant to the decision" in the Anderson case, to dismiss the Notice of Exception filed by the State's Attorney and to confirm the recommendation of the master to dismiss the petition alleging delinquency. In each case the juvenile court issued an order dated 3 August 1973 dismissing the notice of exception and confirming the recommendation of the master. We vacate the order in each case and remand each case with direction to the juvenile judge to hear the petition filed against each respondent *de novo*.

> *As to William Anderson, Case No. 158187 below:*
>
> *Order of 12 May 1972 approving the finding and recommendation of the master vacated;*
>
> *Order of 1 August 1973 granting motion to dismiss exceptions and dismissing case vacated;*
>
> *Case remanded with direction to juvenile judge to hear petition de novo.*
>
> *As to Michael A. Epps, Case No. 004617 below:*
>
> *Order of 16 May 1973 approving the finding and recommendation of the master vacated;*
>
> *Order of 3 August 1973*

*dismissing exceptions and confirming recommendation of master to dismiss the petition vacated;*

*Case remanded with direction to juvenile judge to hear petition de novo.*

*As to Larry Smith, Case No. 003285 below:*

*Order of 18 July 1973 approving the finding and recommendation of the master vacated;*

*Order of 3 August 1973 dismissing exceptions and confirming recommendation of master to dismiss the petition vacated;*

*Case remanded with direction to juvenile judge to hear petition de novo.*

*As to Donald Brady, Case No. 000471 below:*

*Order of 26 January 1973 approving the finding and recommendation of the master vacated;*

*Order of 3 August 1973 dismissing exceptions and confirming recommendation of master to dismiss the petition vacated;*

*Case remanded with direction to juvenile judge to hear petition de novo.*

*Mandate in each case to issue forthwith.*