558 A.2d 1231

**Arthur Neil HILL, Jr.**

**v.**

**Judy Ann HILL.**

**No. 1530, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

June 12, 1989.

Josephine Tornatore (Nelson Oneglia, on the brief), College Park, for appellant.

Jo Benson Fogel, Rockville, for appellee.

Argued before GARRITY, ALPERT and ROBERT M. BELL, JJ.

ALPERT, Judge.

This is an appeal challenging the trial court's jurisdiction to extend a *pendente lite* order following a denial of divorce. The order embraced the custody and support of the parties' minor children and, allegedly, the use and possession of the family home. Appellant, Arthur Neil Hill, Jr., also questions the trial judge's decision not to recuse himself from the second divorce hearing. Specifically he asks:

1. Did the Circuit Court have jurisdiction over *pendente lite* orders for support and related matters after it had denied the Wife's Complaint for Divorce?
2. Did the Circuit Court err in not granting the Appellant's Motion to Recuse?

### FACTS

Arthur N. Hill and Judy Ann Hill, appellee, were married on October 7, 1972 in Prince George's County. Two chil-

dren were born of this marriage. In November, 1985, the couple separated with no reasonable expectation of reconciliation. On December 31, 1985, Mrs. Hill filed a complaint for a Limited Divorce on the Grounds of Constructive Desertion and for *pendente lite* relief. Following a hearing, the court issued a *pendente lite* order on February 19, 1986, granting Mrs. Hill custody of the two minor children, child support of $200.00 per month per child, and use and possession of the family home. Almost immediately following this order and continuing throughout their separation period, various papers, spanning 16 pages of docket entries, were filed by the parties, including motions for contempt because of the husband's failure to comply with *pendente lite* orders, discovery motions, protective orders, sanctions, and show cause orders. At the conclusion of the hearing on April 1, 1987, the court denied Mrs. Hill's request for a limited divorce, but indicated that the existing custody order was to remain in effect. Mrs. Hill filed a Motion to Alter or Amend Judgment, which the court denied on September 8, 1987. Neither party appealed.

On December 7, 1987, Mr. Hill filed a Counter–Complaint for Absolute Divorce based on a two-year separation. Mrs. Hill answered the Counter–Complaint and filed her own Second Amended Complaint on March 7, 1988. A pre-trial conference was held on June 20, 1988. On July 1, 1988, Mr. Hill filed a Motion to Recuse in which he alleged that the court was biased against him and was not prepared to render a fair and impartial ruling on the case. The court conducted a hearing on Mr. Hill's Motion to Recuse, and, after the hearing, denied the motion.

The trial was held August 4, 1988. The court made its findings on the record on August 23, 1988 and granted Mr. Hill's Counter–Complaint for Divorce. The Judgment of Divorce was signed on September 30, 1988 and provided, inter alia, "that Judgment is entered in favor of Judy Ann Hill and against Arthur Neil Hill, Jr. in the amount of $6,212.32 for arrearages in child support through July 31, 1988 ..." It is that provision which apparently spawned the

issues that Appellant has raised in this appeal. Subsequently, on October 13, 1988, Mr. Hill filed a notice of appeal.

## JURISDICTION TO CONTINUE
## PENDENTE LITE ORDERS

Appellant maintains that the court lacked jurisdiction to extend the *pendente lite* orders of custody, support, and use and possession once it denied appellee's complaint for divorce on April 1, 1987. We glean from this argument that but for the improper continuation of the custody and support orders, there would have been no arrearage. As support for his position, appellant contends that the Family Law article of the Maryland Code as revised from former statutes, does not grant the court jurisdiction to decide these matters once a divorce is denied. We will first address the issue of the court's power to extend the *pendente lite* order for custody and support.

Under the early common law of this State courts had no power to make a custody and support determination until a divorce was decreed. *See e.g. Murray v. Murray,* 134 Md. 653, 107 A. 550 (1919). Then, in 1920, the Maryland General Assembly enacted legislation expressly giving the court jurisdiction to render a custody determination "whether a divorce is decreed or denied." 1920 Md. Laws 574. *See Roth v. Roth,* 143 Md. 142, 150, 122 A. 34 (1923); *Hood v. Hood,* 138 Md. 355, 363, 113 A. 895 (1921). This modification of the law was codified in the Md.Ann.Code at Article 16, § 39 (1924). *See Melson v. Melson,* 151 Md. 196, 206, 134 A. 136 (1926). In the same vein, in section 80 of the revised 1924 Code, a court of equity was given jurisdiction to decide custody and support of minors upon any "bill or petition filed by the father or mother ..." requesting that the court make that determination. *See Barnard v. Godfrey,* 157 Md. 264, 145 A. 614 (1929). In *Barnard, supra* the court noted that:

> From this language it will be seen that courts of equity in this state have full power, and it is their duty, to deter-

mine who shall have the custody, control and guardianship of minor children, and who shall be charged with their maintenance and support, when applied to by any of the persons mentioned in the statute; *and this without regard to the question of whether or not the parents of said child or children have been divorced or are living apart.* This section is declaratory of the inherent power of courts of equity over minors, and in the exercise thereof it should be exercised with the paramount purpose in view of securing the welfare and promoting the best interest of the children. (Emphasis supplied).

*Id.,* at 267, 145 A. 614. *See also Stirn v. Stirn,* 183 Md. 59, 64, 36 A.2d 695 (1944) (quoting *Barnard, supra*). The Code has been revised many times since 1924, however, each revision always included a provision granting the court jurisdiction to decide who shall be awarded custody of minors and who shall be charged with their support whether a divorce is decreed or denied.[1]

■ In 1984, the Family Law Article was enacted, which incorporated, into one complete volume, the provisions from various parts of the Code that dealt with family law. The last clause of former Art. 16, Section 25, conferring upon the court jurisdiction over custody and support whether a divorce is decreed or denied, was specifically incorporated

---

1. This language was consistently located in Article 16 of the Md. Annotated Code, however, the section number assigned to the provision changed in each revision; Section 39 (1924), recodified to Section 41 (1939), recodified to Section 34 (1951); recodified to Section 25 (1957). *See Sause v. Sause,* 192 Md. 88, 93, 63 A.2d 632 (1949) (the chancellor should have awarded custody and support to the appellant even though he denied a divorce *a mensa,* pursuant to Art. 16, § 41); *Mower v. Mower,* 209 Md. 413, 419, 121 A.2d 185 (1956) (when a divorce *a mensa* is denied, the court still retains jurisdiction and should decide who shall be awarded custody and support pursuant to Art. 16 § 34); *Koger v. Koger,* 217 Md. 372, 376, 142 A.2d 599 (1958) (Art. 16, § 25 makes it plain that the Chancellor must retain jurisdiction when custody is prayed by the complainant, even where a divorce is denied). *See also Franciscus v. Franciscus,* 31 Md.App. 78, 83–84, 354 A.2d 454 (1976); *Jackson v. Jackson,* 13 Md.App. 725, 733–34, 284 A.2d 654 (1971); *Myers v. Butler,* 10 Md.App. 315, 316, 270 A.2d 341 (1970).

into Title 1, § 1–201 of the Family Law Article. *See* Revisor's Note to § 1–201 and the Family Law Commission Draft 1 of January 14, 1983 at pages 4–6. Section 1–201 provides in pertinent part:

(a) In general—An equity court has jurisdiction over:

(5) custody or guardianship of a child;

\* \* \* \* \* \*

(9) support of a child.

\* \* \* \* \* \*

(b) Custody, guardianship, and support of child.—In exercising its jurisdiction over the custody, guardianship, visitation, or support of a child, an equity court may:

(1) direct who shall have the custody or guardianship of a child, pendente lite or permanently;

(2) determine who shall have visitation rights to a child;

(3) decide who shall be charged with the support of the child, pendente lite or permanently; or

(4) from time to time, set aside or modify its decree or order concerning the child.

Appellant urges this Court to hold that because the Code does not expressly state that the Court retains jurisdiction over custody and support "whether a divorce is decreed or denied" the legislature intentionally repealed the court's jurisdiction over these matters once a divorce is denied. Appellant's interpretation contemplates a substantive change in the law. According to the Report on House Bill 1, Family Law Article, issued on August 22, 1983 by the Commission to Revise the Annotated Code, the purpose of the Code revision was to modernize and clarify the language in the Code, and not to make substantive changes in the law.

The general rule of construction that courts apply to a bulk revision was stated in *Welch v. Humphrey*, 200 Md. 410, 417, 90 A.2d 686 (1952):

"It is true that a codification of previously enacted legislation, eliminating repealed laws and systematically arranging the laws by subject matter, becomes an official

Code when adopted by the Legislature, and, since it constitutes the latest expression of the legislative will, it controls over all previous expressions on the subject, if the Legislature so provides. However, the principal function of a Code is to reorganize the statutes and state them in simpler form. Consequently any changes made in them by a Code are presumed to be for the purpose of clarity rather than change of meaning. Therefore, even a change in the phraseology of a statute by a codification thereof will not ordinarily modify the law, unless the change is so radical and material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code."

See also *Turrisi v. Sanzaro*, 308 Md. 515, 520 A.2d 1080 (1987); *Bureau of Mines v. George's Creek Coal and Land Co.*, 272 Md. 143, 321 A.2d 748 (1974); *Baltimore Tank Lines v. Public Service Commn.*, 215 Md. 125, 137 A.2d 187 (1957); *Welsh v. Kuntz*, 196 Md. 86, 75 A.2d 343 (1950); *Crow v. Hubard*, 62 Md. 560 (1884); and *Matter of Anderson*, 20 Md.App. 31, 315 A.2d 540, *aff'd.* 272 Md. 85, 321 A.2d 516 (1974); *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 667 (1975).

The language in Section 1–201 that states that an equity court has jurisdiction over the custody and support of a child, simplifies the earlier statutes which granted the court jurisdiction to decide custody and support "whether or not a divorce is decreed or denied." The phrase "whether or not ..." is superfluous. Filing for divorce is not a prerequisite to invoking the court's jurisdiction to award custody and support. Section 5–203(c)(1) of the Family Law Article provides "If the parents live apart, a court may award custody of a minor child to either parent." Further, section 12–101 provides that a "court may award child support for a period from the filing of the pleading that requests child support."

In the case *sub judice*, when appellee filed her first complaint for divorce she also requested custody and support. The court awarded her custody and support *pendente*

*lite,* and subsequently extended the order following a denial of divorce. The Court maintained jurisdiction to grant her support from the time she first filed her complaint requesting such support. Section 12–101 does not require a party to ask continually for support in each subsequent pleading that is filed. We have no doubt that a proper party could initiate custody and/or support proceedings independent of any divorce proceeding. Family Law Section 1–201(a)(5) and (b)(3). Therefore, it must logically follow that if the court could entertain an independent action for custody and/or support, it had jurisdiction to extend such order.

Further, the court had jurisdiction, pursuant to section 5–203(c)(1), to extend the custody order because the parties asserted at the divorce hearing on March 31 and April 1, 1987, that they had no intention of living together.[2]

Appellant asserts that the court erred in extending the use and possession order as well. The record, however, does not indicate this to be so. The following colloquy of April 1, 1987 reveals the only articulation whereby the court extended any of the previous orders:

COURT: There is a custody award here, is there not?

MS. FOGEL: (Appellee's attorney) Yes.

COURT: I don't propose to disturb that. He is a fit and proper person. Mrs. Hill is a fit and proper person to have these children. Mrs. Hill now has custody. I haven't heard any reason to disturb that.

Appellant asserts that "the Court indicated that existing orders such as *pendente lite* orders as to ... use of the marital home were to remain in effect (E. 31). There simply is no such statement there or elsewhere in the record with regard to "use and possession."[3]

---

**2.** The Court should be commended for saving the parties additional time and expense in extending the order, rather than requiring them to file new pleadings in which the same relief would have been requested and undoubtedly granted.

**3.** We note that appellant, although charged with making the mortgage payments on the family home failed to do so, and in the parties' final

MOTION TO RECUSE

██ Next, Appellant contends that the trial court exhibited such hostility and bias towards him so as to require the judge to recuse himself from presiding over the final divorce hearing.[4] We have carefully reviewed the record in this case and we find no evidence to support appellant's allegations of bias and prejudice by the judge. Whether a judge should recuse himself is a matter within the discretion of the court. *Marzullo v. Kovens Furniture Co. of Baltimore City,* 253 Md. 274, 276, 252 A.2d 822 (1969). The fact that a court rules in favor of one party over the other does not automatically mean that the judge is biased or prejudiced against the losing party. *See, e.g., Tidler v. Tidler,* 50 Md.App. 1, 12, 435 A.2d 489 (1981). Nor is the fact that a judge may personally know, or have a past employment relationship with one of the parties conclusive as to bias. *See e.g. Marzullo, supra;* (a judge was not required to recuse himself from this case just because a party was represented by a law firm in which the judge had once been a partner and by which his son was employed) and *Harper v. Harper,* 49 Md.App. 339, 431 A.2d 761 (1981) *rev'd on other grounds,* 294 Md. 54, 448 A.2d 916 (1985) (The judge who met appellee once outside the courthouse, and knew the parties' daughter because she was employed by another judge was not required to recuse himself from hearing the case). Further, a judge is not disqualified from hearing a case because he has expressed his opinion as to the case. *State v. Calhoun,* 306 Md. 692, 749, 511 A.2d 461 (1986); *cert. denied,* 480 U.S. 910, 107 S.Ct. 1339, 94 L.Ed. 2d 528 (1987) (*quoting Co. Commrs. Charles Co. v. Wilmer,* 131 Md. 175, 180–81, 101 A. 686 (1917)). Thus, in this

---

judgment for divorce, appellee was awarded $1,816.17 for contribution to past mortgage payments.

4. He bases his complaint on the fact that except for the court's denial of appellee's divorce complaint, his other rulings were against appellant. He further states that appellee's counsel was once employed by the judge as his law clerk.

case we hold the judge properly acted within his discretion when he refused to recuse himself.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.