## FORTMAN *v.* FORTMAN

[No. 229, September Term, 1967.]

*Decided June 28, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, FINAN and SINGLEY, JJ.

*A. Harold Dubois,* with whom were *Paul Berman* and *Daniel A. Bronstein* on the brief, for appellant.

*J. Francis Ford,* with whom was *Jerome A. Hromadnik, Jr.,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City (Wolf, J.) dated May 3, 1967, whereby the appellee, Edward J. Fortman, husband of the appellant, Theresa Fortman, was granted a divorce a mensa et thoro on the ground of desertion in his divorce suit against his wife. The case was actively contested, the wife defending by way of recrimination on the ground of cruelty and constructive desertion because of

the husband's allegedly cruel conduct which had placed her in fear of her life thus requiring her to leave the marital abode.

The parties were married in 1942 and lived together in comparative harmony until sometime in May 1961. According to the wife there was then a fight in the family home while the husband was intoxicated. The husband denied this. On January 29, 1962, according to the wife, an even more violent fight occurred between the parties which resulted in bruises on the wife. The husband denied that such a fight occurred. The wife was involved in an automobile accident on March 26, 1965, as a result of which she was unable to continue to work, after which, the wife contends, her husband by his conduct sought to drive her out of the house. The wife described certain acts by the husband designed to hurt her, but all of these acts were denied by the husband.

The wife left the family abode on May 24, 1966, took all of her personal property with her and went to live with her daughter by a previous marriage. The husband admits that a month or six weeks prior to May 24, 1966, the parties discontinued sleeping in the same bedroom. The husband testified that he locked the bedroom door to prevent his wife from quarreling with him and preventing him from getting sufficient sleep to enable him to do his work the next day. As the wife had a key to the bedroom in which he slept, the husband found it necessary to change the lock on the bedroom door. The wife had some clothes in the bedroom and it was necessary for her to request her husband to unlock the door when she wanted to get some of her clothes.

The wife testified that on May 1, 1966, there was a fight when she went into the bedroom to get some stockings she wished to wear to church. The wife claimed that her husband beat her and inflicted bruises on her (and the existence of some bruises were observed by Mrs. Gardiner, the wife's daughter by a former marriage, according to her testimony), but the husband denies that he hit his wife, stating that he did carry her out of the room against her will. The wife swore out a warrant for the husband's arrest as a result of the May 1 episode and the husband was arrested by the police during the night of May 10 or 11, taken to the police station, booked, posted bail and ulti-

mately released. This charge was subsequently dismissed on May 25, 1966, by the wife on advice of her counsel.

There was no evidence that either party had demanded sexual relations with the other and had been refused, although the testimony rather indicates that there were no sexual relations between the parties for the six weeks prior to May 25.

The husband testified that he had always been a good husband and that his wife left the marital home without good reason. He produced as a witness Charles E. Popp, the brother of the wife, who had known the husband for many years and who had been one of the husband's fishing and hunting friends. He visited the marital home quite frequently, sometimes three or four times a week, but usually a day or two a week. He helped them move into the house. He had never seen the husband mistreat his sister. He knew that his sister no longer lived at the marital home and that the separation had been uninterrupted since the separation.

Harvey D. Gardiner, the wife's son-in-law, also testified for the husband. He had lived at the marital home for approximately three years altogether after he returned from the service in World War II, and frequently visited the parties at the marital home, at least three or four times a week. He testified when asked how the husband treated the wife that "he (the husband) seemed to be very nice," that the husband worked steadily and that he "couldn't see any reason for her leaving." Mr. Gardiner helped the wife move her sewing machine from the marital home during the afternoon of May 25 to the home of the wife's daughter.

Mrs. Gardiner, the wife's daughter, testified for the wife in regard to seeing bruises on her mother and related that the husband in December, 1965, said: "Why in the heck doesn't she (the wife) get out and leave me alone; I ought to stop buying groceries and gas and electric and heat, then she would have to go."

The Chancellor dictated an oral opinion into the record at the end of the testimony setting out in some detail his impressions of the witnesses and the effect of their testimony. He concluded that he should accept the testimony of the husband and concluded that the conduct of the wife indicated that she was

not as afraid of her husband as her testimony might otherwise indicate. He was of the opinion that since the wife actually left the marital abode, the burden of coming forward with evidence to explain all of the facts and circumstances of why she left shifted to her. He concluded that the evidence indicated that the husband was entitled to a divorce a mensa et thoro on the ground of the wife's desertion.

The wife makes two contentions on this appeal: (1) there was insufficient corroboration of the husband's case to justify the granting of the divorce a mensa et thoro, and (2) the Chancellor's finding that the wife deserted the husband was clearly erroneous in that (a) there was no evidence of the necessary intent by the wife to terminate the marital relationship, and (b) the wife had established her defense of recrimination based on cruelty and on constructive desertion resulting from the husband's conduct which justified the wife in leaving the marital abode to preserve her safety, health and self-respect.

We have concluded that there was sufficient corroboration and that the Chancellor was not clearly erroneous in finding that the wife deserted the husband and in ruling against the wife's defenses of recrimination.

As the present case was a vigorously contested divorce case in which there was no possibility of collusion, the corroboration required by Maryland Rule 575 need only be slight. *Soles v. Soles*, 248 Md. 723, 729, 238 A. 2d 235, 238-9 (1968) ; *Comulada v. Comulada*, 234 Md. 287, 293, 199 A. 2d 197, 200 (1964). In the present case, there is no dispute that the wife left the marital abode, so that, as the Chancellor pointed out, the wife bears the burden of coming forward with testimony to explain her prima facie desertion of the husband. The Chancellor found that she was not justified in leaving. The husband's testimony that he had been a good husband and other testimony indicating that his wife was not justified in leaving the marital home was sufficiently corroborated by the witnesses Popp (the wifes' brother) and Gardiner (the wife's son-in-law), both of whom were familiar with the family situation and had frequently and regularly been in the family home. In our opinion there was sufficient corroboration in the present case of the husband's testimony.

The Chancellor concluded that the objective facts, including the wife's remaining in the home for a number of days after she swore out the last warrant for her husband's arrest, her dismissal of the charge (on advice of counsel) the day she left and the wife's own size and apparent physical strength, indicated that the wife's account of her husband's alleged cruelty of treatment was exaggerated and that she was not justified in leaving the family home for this reason or for any other reason. We cannot say that in so finding the Chancellor was clearly erroneous, and as the decision of the case rests upon the findings of fact, the decree will be affirmed.

The wife did not specifically raise the possible point in the lower court, or brief or argue before us, that the husband had constructively deserted the wife by locking the wife out of the bedroom theretofore occupied by them and thus, by inference at least, refusing to have sexual relations with the wife. The fact that this ground of recrimination was not specifically raised, briefed or argued would not prevent us, in this special type of case in which the State has an interest in maintaining and preserving the marital status, from reviewing the possible defense if we thought it were justified by the facts. *See O'Donnell v. O'Donnell,* 203 Md. 105, 99 A. 2d 741 (1953); *Fisher v. Fisher,* 95 Md. 314, 52 A. 898 (1902).

We have concluded, however, that the facts do not justify this possible defense. It is not sufficient to establish constructive desertion by showing that sexual relations have ceased between the husband and wife. There must be a request for such relations by one spouse and an unjustified refusal by the other spouse. *Mower v. Mower,* 209 Md. 413, 121 A. 2d 185 (1956); *Davey v. Davey,* 202 Md. 428, 96 A. 2d 606 (1953). *Cf. Peed v. Peed,* 232 Md. 220, 192 A. 2d 494 (1963); *Wysocki v. Wysocki,* 185 Md. 38, 42 A. 2d 909 (1945); *Hockman v. Hockman,* 184 Md. 473, 41 A. 2d 510 (1945); *Timanus v. Timanus,* 177 Md. 686, 10 A. 2d 322 (1940); and *Fries v. Fries,* 166 Md. 604, 171 A. 703 (1934).

The husband when pressed on cross-examination to admit that the locking of the bedroom door and change of lock was done with the intent to terminate the marriage relationship, declined to so testify, maintaining, as he had previously done,

that his action was to preserve his own health by getting sufficient sleep, undisturbed by his wife's nagging and verbal abuse, in order that he might properly perform his work during the day. There is no evidence that the wife requested the husband to have marital relations with her in the separate bedroom occupied by her during the six week period after the separate bedrooms were established, or that he refused to have such relations. The record rather indicates that there were no such relations between the parties during this period, but, as we have pointed out, the mere fact of the absence of marital relations, particularly during a relatively brief period, is not of itself sufficient to establish constructive desertion based upon the refusal of marital relations.

*Decree affirmed, the costs to be paid by the appellee.*