903 A.2d 857

**Robert M. RICKETTS, Jr.**

v.

**Mary C. RICKETTS.**

**No. 136, Sept. Term, 2003.**

Court of Appeals of Maryland.

July 28, 2006.

**480**

Richard D. Rosenthal (Tydings & Rosenberg L.L.P., on brief), Baltimore, MD, for Appellant.

William P. Englehart, Jr. (Nolan, Plumhoff & Williams, Chtd., on brief), Towson, MD, for Appellee.

Argued before BELL, C.J., and RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, C.J.

The issues presented by this case are: first, whether a spouse's complaint for a limited divorce alleging constructive desertion based on lack of marital relations may be maintained

when both parties continue to live under the same roof, albeit not in the same bedroom and without cohabitation; and, second, whether, notwithstanding the parties' continued living under the same roof,[1] a complaint for custody and visitation of the parties' children may be maintained. We shall hold that, under these circumstances, all of the relief sought by the complaint is available to a complainant and, therefore, the complaint in this case should not have been dismissed.

I.

The appellant, Robert M. Ricketts, Jr. (sometimes, "the appellant" or "Mr. Ricketts"), and Mary C. Ricketts, the appellee (sometimes, "the appellee" or "Mrs. Ricketts"), were married on June 13, 1981 and that union produced three children: Robert III, now emancipated and, thus, not subject to this Court's jurisdiction, Kathryn, who was born in 1987 and is emancipated, and Lawrence, who was born in 1989. It is unclear from the record when the parties' relationship began to deteriorate, but at some point, according to Mr. Ricketts, Mrs. Ricketts "forced [him] out of the bedroom, thus terminating their marital relationship." Since that time, he alleges, the parties have not had marital relations, although they have continued to reside in the marital household with their children, albeit in separate bedrooms.

On July 16, 2002, Mr. Ricketts filed a complaint seeking a limited divorce and custody of their two minor children. He alleged, as grounds for the divorce, constructive desertion, offering in support, Mrs. Ricketts's alleged denial of marital

---

1. By the phrase "live under the same roof," we mean that the parties are technically living together but are not cohabitating, sharing the same bedroom or engaging in marital relations. "Cohabitation," we have explained, describes a relationship of living together "as man and wife," and connotes the mutual assumption of the duties and obligations associated with marriage. *Gordon v. Gordon,* 342 Md. 294, 308, 675 A.2d 540, 547 (1996). *See* Black's Law Dictionary 260 (6th ed.1990) (citations omitted) ("[t]o live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations.").

relations. On October 16, 2002, Mrs. Ricketts filed a Motion to Dismiss,[2] arguing that because the parties continued to live under the same roof, had not separated and, therefore, were not living separate and apart,[3] Mr. Ricketts's complaint for divorce was "fatally defective" and, thus, "must be dismissed." She made the same argument with regards to Mr. Ricketts's complaint for custody, stating that it too was "fatally defective ... because the parties had not separated and were not living apart at the time of the filing of the Complaint." Responding to the appellee's motion, the appellant admitted that the parties were still living together in the same house, under the same roof,[1] but stated that this did not affect the validity of his complaint or the availability of the relief sought, i.e. limited divorce and custody.

The Circuit Court for Carroll County held a hearing on the Motion to Dismiss and the Response to the Motion to Dismiss. The court granted the appellee's Motion to Dismiss, without explanation.

Mr. Ricketts timely noted an appeal of the judgment dismissing his complaint to the Court of Special Appeals. While the case was pending in that court and prior to any proceedings, this Court, on its own initiative, issued the writ of

2. Maryland Rule 2–322 provides:

 "(b) *Permissive.* The following defenses may be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the subject matter, (2) failure to state a claim upon which relief can be granted, (3) failure to join a party under Rule 2–211, (4) discharge in bankruptcy, and (5) governmental immunity. If not so made, these defenses and objections may be made in the answer, or in any other appropriate manner after answer is filed."

3. Although not entirely clear, it does not appear that Mrs. Ricketts is alleging that she and Mr. Ricketts, in addition to living under the same roof, have cohabited, i.e., lived together as husband and wife. Even had she done so, however, it would not affect the result in this case. That is so because this case must be resolved on the pleadings. Therefore, it simply is not required that we resolve the facts. Whether the parties cohabited, or not, is clearly a question of fact.

4. We do not construe the appellant's use of the term, "together," to be an admission that he and Mrs. Ricketts were cohabiting, although that may appear to be the connotation.

certiorari. *Ricketts v. Ricketts,* 380 Md. 230, 844 A.2d 427 (2004).

## II.

A limited divorce,[5] which may be decreed for a limited or an indefinite period, Md.Code (1984, 2004 Repl.Vol.), § 7–102(c) is "one from bed and board. It grants unto the injured spouse the right to live separate and apart from the one at fault. However, the parties remain *man* and *wife,* and there is no severance of the marital bonds." *Courson v. Courson,* 213 Md. 183, 188, 129 A.2d 917, 920 (1957). *See Thomas v. Thomas,* 294 Md. 605, 609, 618, 451 A.2d 1215,

---

5. Before enactment of the Family Law Article, *see* Acts 1984, ch. 296, § 2, eff. Oct. 1, 1984, a limited divorce was denominated a divorce a mensa et thoro. *See* Md.Code (1957) Art. 16, § 25. That section provided:

"Divorces a mensa et thoro may be decreed for the following cases, to wit: First, cruelty of treatment; secondly, excessive vicious conduct; thirdly, abandonment and desertion; and the court may decree such divorces forever, or for a limited time; and in all cases where divorce a mensa et thoro is decreed, it may be revoked at any time thereafter by the court granting the same, upon joint application of the parties to be discharged from the operation of the decree; and the court may decree a divorce a mensa et thoro in cases where a divorce a vinculo matrimonii is prayed, it the causes proved to be sufficient to entitle the party to the same; and in all cases where a divorce is decreed, the court passing the same shall have full power to award the wife such property or estate as she had when married, or the value of the same, or of such part thereof as may have been sold or converted by the husband, having regard to the circumstances of the husband at the time of the divorce, or such part of any such property as the court may deem reasonable; and shall also have power in all cases in which the care and custody of the children of parties forms part of the relief prayed whether a divorce a divorce is decreed or denied to order and direct who shall have the guardianship and custody of the children pendente lite or permanently, and be charged with their support and relation to the children"

A divorce a mensa et thoro has been defined by Black's Law Dictionary 431 (5th ed.1979) as a "partial or qualified divorce, by which the parties are separated and forbidden to live or cohabit together, without affecting the marriage itself." The 8th Edition notes that "a mensa et thoro" is derived from the Latin, "from board and hearth," thus, such a divorce is the forerunner of the judicial separation, "A partial or qualified divorce by which the parties were separated and allowed or ordered to live apart, but remained technically married."

1217, 1222 (1982), noting, in addition, that "[t]his Court has said that 'a divorce a mensa et thoro is practically nothing more than judicial permission to live separate and apart,'" quoting *Dougherty v. Dougherty*, 187 Md. 21, 31, 48 A.2d 451 (1946). This is in contrast to an absolute divorce,[6] which effects a complete severance of the marital bond and entitles either of the parties, or both, to remarry. *Crise v. Smith,* 150 Md. 322, 326, 133 A. 110, 111 (1926) (divorce a vinculo matrimonii ends all rights of either spouse dependent on marriage). *See also* Black's Law Dictionary, Divorce, (8th Ed.2004), equating an absolute divorce with a divorce a vinculo matrimonii.

Among the grounds for a limited divorce is desertion. Md.Code (1984, 2004 Repl.Vol.), § 7–102(a)(3) of the Family Law Article.[7] Desertion may be constructive or actu-

---

**6.** Prior to enactment of the Family Law Article, the term used to refer to an absolute divorce was "a vinculo matrimonii." *See* Art. 16, § 24 (as pertinent, "Upon a hearing of any bill for a divorce, the court may decree a divorce a vinculo matrimonii for the following causes. . . ."). A divorce a vinculo matrimonii has been defined as "[a] total divorce of husband and wife, dissolving the marriage tie and releasing the parties wholly from their matrimonial obligations." Black's Law Dictionary, Divorce, (8th Ed.2004). *See Crise v. Smith,* 150 Md. 322, 326, 133 A. 110, 111(1926) (divorce a vinculo matrimonii ends all rights of either spouse dependent on marriage); *Millar v. Millar,* 200 Md. 14, 21, 87 A.2d 838, 841 (1952) (noting that the former spouses became tenants in common as result of Maryland law operating on their changed status); *Reed v. Reed,* 109 Md. 690, 72 A. 414, 415 (1909); *Tyson v. Tyson,* 54 Md. 35, 37–38(1880).

**7.** Md.Code (1957, 2004 Repl.Vol.), § 7–102(a) of the Family Law Article provides:

"(a) *Grounds for limited divorce*—The court may decree a limited divorce on the following grounds:

"(1) cruelty of treatment of the complaining party or of a minor child of the complaining party;

"(2) excessively vicious conduct to the complaining party or to a minor child of the complaining party;

"(3) desertion; or

"(4) voluntary separation, if:

"(i) the parties are living separate and apart without cohabitation; and

"(ii) there is no reasonable expectation of reconciliation."

al. *See, e.g., Walker v. Walker,* 209 Md. 428, 431, 121 A.2d 195, 198 (1956). We have defined actual desertion as

> "the voluntary separation of one of the married parties from the other, or the refusal to renew suspended cohabitation, without justification either in the consent or the wrongful conduct of the other party ... [Furthermore,] the separation and intention to abandon must concur, and desertion does not exist without the presence of both. The two need not begin at the same time, but desertion begins whenever to either one the other is added."

*Boyd v. Boyd,* 177 Md. 687, 688, 11 A.2d 461, 464 (1940) (citations omitted).

 What is required to constitute constructive desertion was addressed in *Scheinin v. Scheinin,* 200 Md. 282, 89 A.2d 609 (1952). In that case, we said

> "It is accepted that any conduct of a husband that renders the marital relation intolerable and compels the wife to leave him may justify a divorce on the ground of constructive desertion, even though the conduct may not justify a divorce on the ground of cruelty. *Sullivan v. Sullivan,* [199 Md. 594, 600], 87 A.2d 604, 607 [(1952)]. Any misconduct of the husband will justify the wife in leaving him when it makes it impossible for her to live with him without loss of her health or self-respect, or gives her reasonable apprehension of bodily injury. If the husband's misconduct has been such as to render continuance of the marriage relation unbearable, justifying the wife in leaving him, he is the one who is guilty of desertion. *Polley v. Polley,* 128 Md. 60, [66,] 97 A. 526, [529 (1916)]; *Schwartz v. Schwartz,* 158 Md. 80, 90, 148 A. 259[, 262–63 (1930)]; *Singewald v. Singewald,* 165 Md. 136, [147,]166 A. 441[, 446 (1933)]; *Kline v. Kline,* 179 Md. 10, [13,] 16 A.2d 924[, 925 (1940)]; *Fischer v. Fischer,* 182 Md. 281, [286,] 34 A.2d 455[, 457 (1943)]; *Hockman v. Hockman,* 184 Md. 473, [478,] 41 A.2d 510[, 513 (1945)]; *Miller v. Miller,* 185 Md. 79, [82,] 42 A.2d 915[, 917 (1945)]; *Bradshaw v. Bradshaw,* 189 Md. 322, [325,] 55 A.2d

719[, 720 (1947)]; *Gold v. Gold,* 191 Md. 533, 539, 62 A.2d 540[, 543 (1948)]."

*Id.* at 290, 89 A.2d at 612–13. *See Murphy v. Murphy,* 248 Md. 455, 460, 237 A.2d 523, 525–526 (1968); *Ballan v. Ballan,* 251 Md. 737, 740–743, 248 A.2d 871, 872 (1969), both cited by *Deckman v. Deckman,* 15 Md.App. 553, 560, 292 A.2d 112, 115–116 (1972), for the proposition that it is constructive desertion when the misconduct of one spouse "makes it impossible for the other to continue to live with the erring spouse without loss of his or her health, or self respect or gives reasonable apprehension of bodily injury will justify the innocent spouse in leaving the other on the grounds of 'constructive desertion.' " Unlike actual desertion, where it is the party deserted who has the cause for divorce, in instances of constructive desertion, it is the departing party who has the cause of action for divorce.

▮▮▮▮▮ To be sure, both actual desertion and constructive desertion generally require that one of the spouses physically leave the marital home. We have held, however, that constructive desertion may occur where both parties continue to live under the same roof. In *Scheinin,* we were emphatic and clear:

"It is beyond question that there may be a desertion although the husband and wife continue to live under the same roof. For desertion, as applied to husband and wife, signifies something more than merely ceasing to live together. It means ceasing to live together as husband and wife."

*Id.,* at 290–91, 89 A.2d at 613. *See Mower v. Mower,* 209 Md. 413, 417, 121 A.2d 185, 186–187 (1956); *Kelsey v. Kelsey,* 186 Md. 324, 326, 46 A.2d 627, 628 (1946); *Dotterweich v. Dotterweich,* 174 Md. 697, 200 A. 523, 523–524 (1938); *Fries v. Fries,* 166 Md. 604, 607–608, 171 A. 703, 704 (1934); *Klein v. Klein,* 146 Md. 27, 33, 125 A. 728, 730 (1924); *Roth v. Roth,* 145 Md. 74, 125 A. 556 (1924); *Fleegle v. Fleegle,* 136 Md. 630, 633, 110 A. 889, 890 (1920). We have explained:

"the true doctrine is believed to be that the statutory term 'desertion,' as applied to husband and wife, means a cessa-

tion of the marital relation; and this doctrine is in accord with the general principles of the divorce law . . . [d]esertion implies something more than merely ceasing to cohabit or live together; for, as applied to husband and wife, it means the ceasing to live together as husband and wife."

*Fleegle,* 136 Md. at 634, 110 A. at 890. *See also Crumlick v. Crumlick,* 164 Md. 381, 381, 165 A. 189, 189 (1933). Thus, "it is unquestionably the law in this State that permanent refusal of either the husband or the wife to have sexual intercourse with the other spouse, from no consideration of health or other good reason, constitutes matrimonial desertion although the parties continue to live in the same house." *Mower v. Mower,* 209 Md. 413, 417, 121 A.2d 185, 186–187 (1956) (citations omitted). The fact that the spouses sleep in separate bedrooms or that they have ceased engaging in sexual relations does not per se establish constructive desertion, however. *Whitehurst v. Whitehurst,* 257 Md. 685, 690, 264 A.2d 822, 825 (1970); *Parsons v. Parsons,* 255 Md. 602, 604, 258 A.2d 437, 438 (1969); *Fortman v. Fortman,* 250 Md. 355, 360, 243 A.2d 517, 520 (1968); *Jones v. Jones,* 186 Md. 312, 314, 46 A.2d 617, 618 (1946); *Wysocki v. Wysocki,* 185 Md. 38, 41, 42 A.2d 909, 910 (1945); *Ruckle v. Ruckle,* 141 Md. 207, 214, 118 A. 472, 474 (1922). Additionally, when a husband and wife continue to live together without marital relations and yet neither makes any effort towards reconciliation, it is presumed that both spouses prefer to live under such circumstances, and, therefore, neither has a cause for divorce on the grounds of constructive desertion. *Davey v. Davey,* 202 Md. 428, 432, 96 A.2d 606, 608 (1953).

 In the instant case, it is alleged by the appellant that Mrs. Ricketts denied him marital relations and forced him from the marital bedroom. Under Md.Code (1984, 2004 Repl. Vol.), § 7–102(a)(3) of the Family Law Article and, pursuant to the aforementioned case law, if those allegations are established, the appellant is able to prove that they are true, Mr. Ricketts has cause for a limited divorce, notwithstanding that he and Mrs. Ricketts are still living under the same roof, those

allegations, and the necessary inferences, may sufficiently establish, for pleading purposes, constructive desertion.

To be sure, as we have seen, Mrs. Ricketts disputes Mr. Ricketts's entitlement to a limited divorce on the grounds of constructive desertion. It is her view and position that there is a "fatal flaw" in the appellant's allegations. That flaw is, she submits, the allegation that the parties are living under the same roof, not, therefore, separate and apart.[8] Constructive desertion, the appellee contends, in other words, may only be established when the parties are living separate and apart, that, in the absence of separation, there is no ground for divorce on that ground. Accordingly, her motion to dismiss.

This is thus an appeal from a judgment granting a motion to dismiss. As we made clear in *Afamefune ex rel. Afamefune v. Suburban Hosp., Inc.,* 385 Md. 677, 683, n. 4, 870 A.2d 592, 595 n. 4 (2005),

> "A motion to dismiss for failure to state a claim tests the sufficiency of the pleadings. Md. Rule 2–322(b)(2); *see Converge Services Group, LLC v. Curran,* 383 Md. 462, 475, 860 A.2d 871, 878–79 (2004) ('consideration of the universe of "facts" pertinent to the court's analysis of the motion are limited generally to the four corners of the complaint and its incorporated supporting exhibits, if any'); Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary,* 206 (3d ed.2003) ('[t]he object of the motion is to argue that as a matter of law relief cannot be granted on the facts alleged')."

Thus, when reviewing the grant of such a motion, a court "must assume the truth of all well-pled facts in the complaint as well as the reasonable inferences that may be drawn from

---

**8.** To the extent that Mrs. Ricketts disputes the appellant's allegations that they are not living together as husband and wife or that she forced him from the marital bed or that she wished to terminate the marriage, having rebuffed his attempts at reconciliation, that does not change the focus of the analysis. As we shall see, although the appellant will not be relieved of his obligation to prove the allegations he makes, the appellee's disagreement with those allegations does not determine the adequacy of the complaint.

those relevant and material facts." *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 414, 823 A.2d 590, 597 (2003) (indicating that the we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party). *See Benson v. State*, 389 Md. 615, 626, 887 A.2d 525, 531 (2005); *Bobo v. State*, 346 Md. 706, 707–708, 697 A.2d 1371, 1372–1373 (1997); *Allied Invest. Corp. v. Jasen*, 354 Md. 547, 555, 731 A.2d 957, 961 (1999) (reviewing motions to dismiss, trial and appellate courts "assume the truth of all well-pleaded, relevant, and material facts in the complaint and any reasonable inferences that can be drawn therefrom."); *Bennett Heating & Air Conditioning, Inc.*, 342 Md. 169, 674 A.2d 534 (1996) ("the facts to be [considered are] those that are well pleaded by the plaintiffs, including those facts that may fairly be inferred from the matters expressly alleged"); *Board of Education v. Browning*, 333 Md. 281, 286, 635 A.2d 373, 376 (1994) (in evaluating a motion to dismiss, the court "must accept as true all well-pleaded facts and allegations in the complaint"); *A.J. Decoster Co. v. Westinghouse Electric Corp.*, 333 Md. 245, 249, 634 A.2d 1330, 1332 (1994) ("the truth of all well-pleaded relevant and material facts as well as all inferences that reasonably can be drawn therefrom" must be assumed). Dismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff. *Allied Invest. Corp. v. Jasen*, 354 Md. at 555, 731 A.2d at 961; *Bobo v. State*, 346 Md. at 709, 697 A.2d at 1373; *Morris v. Osmose Wood Preserving*, 340 Md. 519, 531, 667 A.2d 624, 630 (1995). "On appeal, a reviewing court must determine whether the trial court was legally correct, examining solely the sufficiency of the pleading." *Benson v. State*, 389 Md. at 626, 887 A.2d at 531.

There is no contention by the appellee that the allegations made by the appellant, and the permissible inferences drawable therefrom, are not material or relevant or that they involve trivial matters. Nor is there any contention made that the allegations are not well-pled. Accordingly, viewing the well-pled allegations and the permissible inferences as true and in the light most favorable to the appellant, the appellant's

complaint should not have been dismissed. The trial court erred in doing so.

The appellant does, however, have the burden of proving the facts he has alleged, *Owings v. Owings,* 148 Md. 124, 128 A. 748, 749 (1925); *Lent v. Lent,* 202 Md. 240, 244–245, 96 A.2d 14, 16 (1953), as well as of introducing evidence of his attempt to renew marital relations and of Mrs. Ricketts's intent to end the marriage, *Moran v. Moran,* 219 Md. 399, 149 A.2d 399 (1959), and must also properly corroborate his allegations. Md.Code (1984, 2004 Repl. Vol.), § 7–101(b) of the Family Law Article.

## III.

It is undisputed that the Circuit Court has jurisdiction to determine the custody and support of children and establish the visitation rights of the non-custodial parent. Md.Code (1984, 2004 Repl.Vol.) § 1–201 of the Family Law Article.[9] And that jurisdiction exists without regard to whether one of the parties has been granted, or is entitled to, a limited divorce. *See Koger v. Koger,* 217 Md. 372, 376, 142

---

9. Md.Code (1984, 2004 Repl.Vol.) § 1–201 of the Family Law Article, as relevant, provides:
 "(a) *In general.* An equity court has jurisdiction over:
 * * * *
 "(4) divorce;
 "(5) custody or guardianship of a child except for a child who is under the jurisdiction of any juvenile court and who previously has been adjudicated to be a child in need of assistance;
 "(6) visitation of a child;
 "(9) support of a child.
 * * * *
 "(b) In exercising its jurisdiction over the custody, guardianship, visitation, or support of a child, an equity court may:
 "(1) direct who shall have the custody or guardianship of a child, pendente lite or permanently;
 "(2) determine who shall have visitation rights to a child;
 "(3) decide who shall be charged with the support of the child, pendente lite or permanently."
 Its predecessor provision, repealed and re-codified as a part of Code Revision, *see* Acts 1984, c. 296, § 1, eff. Oct. 1, 1984, was Maryland Code (1974, 1980 Repl.Vol., 1983 Cum. Supp.) § 3–602 of the Courts and Judicial Proceedings Article.

A.2d 599, 601 (1958) (noting that Md.Code (1957), Art. 16, § 25 made it plain that the Chancellor must retain jurisdiction for the purpose of deciding custody, when custody is prayed, even where a divorce is denied); *Smith v. Smith,* 216 Md. 141, 145, 140 A.2d 58, 60 (1958); *Mower,* 209 Md. at 419, 121 A.2d at 187; *Sause v. Sause,* 192 Md. 88, 93, 63 A.2d 632, 634 (1949); *Stirn v. Stirn,* 183 Md. 59, 64, 36 A.2d 695, 697–698 (1944); *Crumlick v. Crumlick,* 164 Md. 381, 387–388,165 A. 189, 192 (1933); *Barnard v. Godfrey,* 157 Md. 264, 145 A. 614 (1929); *Hill v. Hill,* 79 Md.App. 708, 711–12, 558 A.2d 1231, 1233 (1989). Indeed, prior to the amendment of the statute in 1929, the issue in this case would appear to have been decided. In *Barnard, supra,* referring to Md.Code (1924) Art. 16, § 80,[10] this Court observed:

"From this language it will be seen that courts of equity in this state have full power, and it is their duty, to determine

***

**10.** Md.Code (1924) Art. 16, § 80 then provided:

"The several equity courts of this State shall have original jurisdiction in all cases relating to the custody or guardianship of children and may on bill or petition filed by father or mother or relative or next of kin or next friend of any child or children to direct who shall have the custody or guardianship of such child or children, and who shall be charged with his, her or their support and maintenance, and may from time to time thereafter annul, vary or modify its decree or order in relating to such child or children."

This provision was originally enacted in 1920. *See* Acts of 1920, ch. 573. At that time, Md.Code (1924) Art. 16, § 39 provided that "in all cases where a divorce is decreed, the court passing the same shall have full power to award to the wife such property or estate as she had when married, or the value of the same, or of such part thereof as may have been sold or converted by the husband, having regard to the circumstances of the husband at the time of the divorce, or such part of any such property as the court may deem reasonable; and shall also have power to order and direct who shall have the guardianship and custody of the children, and be charged with their support and maintenance, and may at any time thereafter annul, vary or modify such order in relation to the children." By Acts of 1920, ch. 574, that provision was amended to provide that the equity courts "shall also have power, in all cases in which the care and custody of the children of parties forms [sic] part of the relief prayed, whether a divorce is decreed or denied." *Hood v. Hood,* 138 Md. 355, 363, 113 A. 895, 898 (1921). In *Hood,* this quotation is cited as Md.Code (1924), Art. 16, § 38, as opposed to the correct section, § 39.

who shall have the custody, control and guardianship of minor children, and who shall be charged with their maintenance and support, when applied to by any of the persons mentioned in the statute; and this without regard to the question of whether or not the parents of said child or children have been divorced or are living apart."

*Id.,* at 267, 145 A. at 615.

Pertinent to the issue of parental custody over minor children, a provision addressing the subject was added to the Maryland Code in 1929. In addition to acknowledging and mandating that "[t]he father and mother are the joint natural guardians of their minor child" and charging them equally with its support, care, nurture, welfare and education, Acts of 1929, ch. 561 [11] provided, with respect to the award of custody to a parent, that "[w]here the parents live apart, the court may award the guardianship of the child to either of them." Captioned, "Parent and Child," it was effective June 1, 1929 and was codified at Md.Code (1924) Article 72A, § 1. As a result of Code Revision, the applicable section now is § 5-203 of the Family Law Article, having been re-codified without substantive change, Acts of 1986, ch. 65; *Taylor v. Taylor,* 306 Md. 290, 301 n. 9, 508 A.2d 964, 969 n. 9 (1986). As pertinent

---

11. Acts of 1929, ch. 561 provided:

"The father and mother are the joint natural guardians of their minor child and are equally charged with its care, nurture, welfare and education. They shall have equal powers and duties, and neither parent has any right superior to the right of the other concerning the child's custody. If either the father or mother dies, or abandons his or her family, or is incapable of acting, the guardianship devolves upon the other parent. Where the parents live apart, the court may award the guardianship of the child to either of them."

Md.Code (1924) Art. 72A, § 1, at which the provision was codified, was amended by Acts of 1951, ch. 678, by striking the word "equally" and charging the parents, "jointly and severally," not only with the care, nurture, welfare, and education of their minor child, but also with its "support." Thus, § 5-203(b), the successor to Art. 72A, § 1, now provides:

"(b) The parents of a minor child . . .:

"(1) are jointly and severally responsible for the child's support, care, nurture, welfare, and education; and

"(2) have the same powers and duties in relation to the child."

to the issue this case presents for decision, § 5–203(d) [12] provides:

"(d)(1) If the parents live apart, a court may award custody of a minor child to either parent or joint custody to both parents.

"(2) Neither parent is presumed to have any right to custody that is superior to the right of the other parent."

It is the fact that § 5–203(d)(1) uses the proviso, "if the parties live apart," when addressing a court's award of custody to a parent that is at the heart of the appellee's argument and, apparently, was the basis for the Circuit Court's decision to dismiss the appellant's complaint for custody. The appellee thus argues that this introductory proviso limits the court's power to award custody to one parent over the other to those situations in which the parents are living apart, i.e those in which they are actually separated and not living under the same roof. She maintains this position notwithstanding § 1–201 and its clear and simple, though general, statement of the court's jurisdiction in parent-to-parent custody matters.

The appellant sees the matter quite differently. He submits, on the contrary, that § 1–201 does more than simply describe the court's jurisdiction; it instead is a grant of power, imbuing the courts with the responsibility to determine custody, visitation, and support regardless of whether the parents are divorced or physically separated. He relies on this Court's cases, decided both before and after the passage of Acts of 1929, ch. 561, reviewing the Circuit Courts' decisions with respect to parental custody where the parents were still living under the same roof.

The appellant has the better of the argument.

---

**12.** This section addresses only the issue of the custody of the minor child or children, not support or visitation. Custody, however, is the threshold: until there is an award of custody, there ordinarily is no need or occasion to consider or decide the ancillary and dependent issues of support and visitation.

As we have seen, it cannot be doubted that the fact that the parties are living under the same roof, have not physically separated, is not, alone, sufficient to justify the court in refusing to grant either party a divorce. On the contrary, as we have also seen, this Court has held, *see Kelsey,* 186 Md. at 326, 46 A.2d at 628:

"Abandonment, within the contemplation of the divorce statute means something more than merely ceasing to live together; it means a cessation of the marital relation. Thus we recognize that a desertion may exist although the husband and wife live under the same roof."

If a divorce may be decreed when the parties are living under the same roof, it would make no sense, indeed, it would be illogical, to deny the court the right to determine the custody, and support of the children of that marriage and, to the extent required, establish visitation with respect to them.

To be sure, § 5–203(d)(1) unmistakably contains the requirement that "the parents live apart" as a condition of the court awarding custody to either parent. And, viewing the statute in this context, as a self contained unit, that condition is both clear and unambiguous. It is well settled that when that is the case, we give effect to the words of the statute as written, we do not seek meaning or intent from any other source. Where, in other words, a statute is clear and unambiguous, logic will not substitute for, or trump, the clarity of the words. *Stanley v. State,* 390 Md. 175, 182, 887 A.2d 1078, 1082 (2005); *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426, 427 (2002); *Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 421 (1997).

Section 5–203(d)(1) may not be read in isolation, however. *Adventist Health Care Inc. v. Maryland Health Care Comm'n,* 392 Md. 103, 125 n. 13, 896 A.2d 320, 333 n. 13 (2006), citing *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004); *Navarro–Monzo v. Washington Adventist,* 380 Md. 195, 204, 844 A.2d 406, 411 (2004). It must be read in light of, and in conjunction with, the court's jurisdiction in divorce and custody matters, § 1–201(a) and (b), the relation-

ship between divorce and custody, as defined by this Court, *see Barnard v. Godfrey, supra,* 157 Md. at 267, 145 A. at 615–616, and the applicable grounds for divorce. § 7–102(a). *Waddell v. Kirkpatrick,* 331 Md. 52, 60, 626 A.2d 353, 357 (1993) ("the Legislature is presumed to be aware of the interpretation that this Court has placed upon its enactments"); *see Pack Shack, Inc. v. Howard County,* 371 Md. 243, 257, 808 A.2d 795, 803 (2002); *Blevins v. Baltimore County,* 352 Md. 620, 642, 724 A.2d 22, 33 (1999).

In *Barnard,* just months before the enactment of the predecessor legislation to § 5–203(a), requiring "living apart" as a condition for the award of custody to one parent over the other, we construed the then applicable statute as empowering the equity courts, whenever application for that relief was sought by one or both parents, to determine custody, support and visitation *"without regard to the question of whether or not the parents of said child or children have been divorced or are living apart."* 157 Md. at 267, 145 A. at 615 (emphasis added). We also acknowledged that section "as declaratory of the inherent power of courts of equity over minors, and [that] in the exercise thereof it should be exercised with the paramount purpose in view of securing the welfare and promoting the best interest of the children." *Id.* The Legislature did not disturb the courts' right to determine custody, support or visitation when a divorce was not decreed, even though, when it enacted Acts of 1929, ch. 561, it knew that it was the law that parties living under the same roof could be divorced. *Klein v. Klein,* 146 Md. 27, 33, 125 A. 728, 730 (1924); *Roth v. Roth,* 145 Md. 74, 125 A. 556 (1924).

When so viewed, rather than clear and unambiguous, the phrase is ambiguous. *Collins v. State,* 383 Md. 684, 689, 861 A.2d 727, 730 (2004); *Gardner v. State,* 344 Md. 642, 648, 689 A.2d 610, 613 (1997)("[s]tatutes that are clear when viewed separately may well be ambiguous where their application in a given situation, or when they operate together, is not clear."). *See also Sullins v. Allstate Ins. Co.,* 340 Md. 503, 508, 667 A.2d 617, 619 (1995) (construing contract terms); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 74, 517 A.2d 730, 732

(1986) (same). Given the purpose of the courts' power over minors, to promote their best interest, and the connection between custody decisions and divorce, the logic of the result the legislation will effect may be considered when trying to discern the Legislature's intent.

This approach is consistent with the Court's decision in *Scheinin v. Scheinin*, 200 Md. 282, 89 A.2d 609 (1952). There, Mrs. Scheinin filed a complaint for a divorce a mensa et thoro, now a limited divorce pursuant to § 7–102, on the grounds of desertion and cruelty of treatment and, in addition, alimony, for custody of the children of the marriage, support, and counsel fees. *Id.* at 285, 89 A.2d at 610. There was much dissatisfaction between Mr. and Mrs. Scheinin. At the center of the dissatisfaction was Mr. Scheinin's relationship with his secretary, which Mrs. Scheinin alleged was the cause of his abandonment and ill-treatment of her. After her insistence that the secretary leave the marital home gained success, Mr. Scheinin, she stated, treated her "with great cruelty," spoke abusively to her, ridiculed her in front of the children and struck her "many times." Subsequently, Mr. Scheinin told Mrs. Scheinin that "he did not want to have anything more to do with her," whereupon Mrs. Scheinin, "in consequence of that demand," moved to a back bedroom which she used as her bedroom, thereafter. She remained under the same roof with Mr. Scheinin, however, but without co-habitation, *id.* at 286–287, 89 A.2d at 611, and despite Mr. Scheinin's cruelty and disregard. *Id.* When asked why she did not leave with her children, Mrs. Scheinin stated that "she had no place to go." *Id.* at 291, 89 A.2d at 613.

The chancellor granted Mrs. Scheinin a limited divorce on the ground of constructive desertion and awarded her alimony, custody of the children, and child support. *Id.* at 290–291, 89 A.2d at 612–613. We affirmed the decree granting Mrs. Scheinin a limited divorce, noting that "[i]t is beyond question that there may be a desertion although the husband and wife continue to live under the same roof." Without referring to Art. 75A, § 1, which then prescribed the "living apart" requirement, but defining desertion in the marital context in

terms of "ceasing to live together as husband and wife," *id.* at 290–91, 89 A.2d at 613, the Court also affirmed the custody and support decision, thus sanctioning the determination of custody and support where the parents, rather than living apart, are living under the same roof.

*Mower v. Mower,* 209 Md. 413, 121 A.2d 185 (1956), though by no means identical, is nevertheless instructive.[13] In that case, Mrs. Mower sought a limited divorce from Mr. Mower, *pendente lite* alimony, custody of their child, child support, and attorney's fees. *Id.* at 415, 121 A.2d at 185. When Mrs. Mower filed for divorce and also when the case was tried, both parties were living under the same roof, but had not had marital relations in several years. *Id.* at 416, 121 A.2d at 185. Since neither party had made an effort at reconciliation, the trial court refused to grant a divorce to either party, finding that both of them were at fault, as they were content to live in a state of animosity and estrangement and that, therefore, no desertion had occurred. *Id.* at 416–17, 121 A.2d at 186. It then dismissed the bill of complaint. This Court agreed that neither party was entitled to a divorce, *id.* at 417–19, 121 A.2d at 186–87; however, it reversed the trial court's dismissal of Mrs. Mower's bill of complaint. *Id.* at 419, 121 A.2d at 187. Referring to Art. 16, § 34, empowering the equity courts to decide custody issues presented in a divorce action, whether a divorce is decreed or not, the Court opined:

> "Where a bill for divorce *a mensa et thoro* also prays for custody of a minor child and for its support and maintenance, and the divorce is denied, the bill should not be dismissed but custody should be awarded and jurisdiction should be retained for the purpose of awarding support and

---

13. Appellee argues that *Mower v. Mower,* 209 Md. 413, 121 A.2d 185 (1956), because the bill of complaint for divorce in that case was based on actual, not constructive, desertion, is not completely relevant to the analysis of the case *sub judice.* While it is not entirely clear from the opinion whether the ground was actual or constructive, the court simply noted that "[c]omplainant sought a divorce on the ground that her husband abandoned her bedroom," *Mower,* 209 Md. at 416, 121 A.2d at 186, we fail to see how either scenario would make any difference in the analysis.

maintenance if the circumstances should warrant such action."

*Id.* at 419–20, 121 A.2d at 188. The record does not reflect that the parties' living arrangements changed during the proceedings. Consequently, it must be presumed that this Court, in directing the trial court to consider the wife's bill for custody, did so notwithstanding that Mr. and Mrs. Mower were living under the same roof.

This result and this approach are consistent with the primacy of the interests of the child and the courts' paramount concern "to secure the welfare and promote the child's best interests." *Stancill v. Stancill,* 286 Md. 530, 534–5, 408 A.2d 1030, 1033 (1979), citing *Glading v. Furman,* 282 Md. 200, 383 A.2d 398 (1978); *Burns v. Bines,* 189 Md. 157, 162–163, 55 A.2d 487, 489 (1947); *Barnard v. Godfrey,* 157 Md. 264, 267, 145 A. 614, 615 (1929). *See also Kemp v. Kemp,* 287 Md. 165, 170, 411 A.2d 1028 (1980); *Ross v. Hoffman,* 280 Md. 172, 174–75, 372 A.2d 582 (1977); *Krebs v. Krebs,* 255 Md. 264, 266, 257 A.2d 428 (1969); *Montgomery County Department of Social Services et al. v. Sanders,* 38 Md.App. 406, 381 A.2d 1154 (1977); Md.Code (1957, 2004 Repl.Vol.), § 1–201 of the Family Law Article. The trial court, in short, whether, or not, it concludes that Mr. Ricketts is entitled to a divorce, has the jurisdiction and power to determine the custody, visitation, and support of the Ricketts' children.

**JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.**