Circuit Court for Cecil County
Case No. 07-C-14-000158

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1006

September Term, 2016

_____

JAMES RICKY HOLBROOK

v.

HANNAH NEWELL

_____

Graeff,
Kehoe,
Moylan, Charles E., Jr.,
    (Senior Judge, Specially Assigned)
JJ.

_____

Opinion by Kehoe, J.

_____

Filed: February 1, 2017

The issue in this appeal is whether a circuit court has jurisdiction to resolve a child custody dispute between unmarried parents when the parents are living together. In *Ricketts v. Ricketts*, 393 Md. 479, 501 (2006), the Court of Appeals held that a court had such jurisdiction in a divorce action even if the parents were sharing the same household and even if the court declined to grant a divorce. We will extend the holding of *Ricketts* to cases where the parents are unmarried and reverse a judgment of the Circuit Court for Cecil County.

## Background

James Ricky Holbrook and Hannah Newell are the biological parents of K., a minor child. In January 2015, the circuit court entered a consent order which, in addition to other relief, awarded the parties joint custody of K. In September 2015, Mr. Holbrook filed a motion to modify the custody provisions of the earlier order. While that motion was pending, Mr. Holbrook filed an ex parte request for custody, in which he asserted that Ms. Newell was unable to care for K., and that K. had been residing exclusively with him for several months because Ms. Newell did not have a fixed address. The circuit court held a hearing on this petition on May 16, 2016.

The first witness at the hearing was Ms. Newell's mother. She testified that Ms. Newell was unable to care adequately for K. because of a psychological condition. In his own testimony, Mr. Holbrook stated that K. and Ms. Newell were residing with him so that he could care for K., and so that K. and her mother would have a place to live while Ms. Newell seeks treatment for her health problems. The circuit court then recessed. When proceedings resumed, the following occurred:

THE COURT: Returning on the record of Hannah Newell versus Ricky James Holbrook, Junior . . . . We are conducting an expedited hearing on Pendente Lite Custody.

And the last testimony that I heard from Mr. Holbrook is that the parties are residing together.

Is that correct, [appellant's counsel]?

[Appellant's Counsel]: Yes, Your Honor.

THE COURT: Okay, I don't believe that the Court has jurisdiction to continue a hearing in this matter.

I'm going to dismiss the petition.

Mr. Holbrook filed a motion for reconsideration, in which he presented the same arguments as he does to this Court. The circuit court denied the motion. This timely appeal followed.

Analysis

The circuit court dismissed the custody petition on the grounds that it lacked subject matter jurisdiction because the parties were living in the same household. Whether the court's interpretation of its inherent and statutory authority was correct is a legal question, which we review *de novo. Cabrera v. Mercado*, 230 Md. App. 37, 80 (2016).

There are two relevant statutes. The first is § 5-203(d)(1) of the Family Law Article (1984, 2012 Repl. Vol.) ("FL"), which provides that, "if the parents live apart, a court may award custody to either parent or joint custody to both parents." The second statute is FL § 1-201, which states in pertinent part:

> (b) An equity court has jurisdiction over:
>                              . . .
> (5) custody or guardianship of a child except for a child who is under the jurisdiction of any juvenile court and who previously has been adjudicated to be a child in need of assistance;
> (6) visitation of a child;

(c) In exercising its jurisdiction over the custody, guardianship, visitation, or support of a child, an equity court may:
(1) direct who shall have the custody or guardianship of a child, pendente lite or permanently;
(2) determine who shall have visitation rights to a child;

. . . .

Read together, the two statutes are admittedly ambiguous—§ 5-203(d) authorizes a court to decide custody issues "if the parents live apart," whereas § 1-201(b) contains no such limitation. The Court of Appeals recognized and resolved this ambiguity in *Ricketts v. Ricketts*, 393 Md. 479, 501 (2006). In that case, the Court held that a circuit court could decide custody even if the parties to a divorce action were living in the same household, and even if the court declined to grant a judgment of divorce. At the heart of the Court's analysis is the long-established principle that a court's authority to decide issues of custody in the best interests of minor children is inherent and "'d[oes] not emanate from the Legislature.'" *Taylor v. Taylor*, 306 Md. 290, 298–99 (1986) (citing *Glading v. Furman,* 282 Md. 200, 208 (1978); *Coleman v. Coleman,* 228 Md. 610, 613 (1962)).

In reaching its result, the *Ricketts* Court examined the legislative history of the two statutes. The Court noted that the original version of what is now FL § 1-201:

> empower[ed] the equity courts, whenever application for that relief was sought by one or both parents, to determine custody, support and visitation "*without regard to the question of whether or not the parents of said child or children have been divorced or are living apart.*"

393 Md. at 498 (quoting *Barnard v. Barnard*, 157 Md. 264, 267 (1929) (emphasis added by *Ricketts*)). The Court "also acknowledged that section 'as declaratory of the inherent power of courts of equity over minors, and [that] in the exercise thereof it should be

exercised with the paramount purpose in view of securing the welfare and promoting the best interest of the children.'" *Id.* (quoting *Barnard*, 157 Md. at 267). The Court concluded that "the Legislature did not disturb the courts' right to determine custody . . . when a divorce was not decreed" when it enacted the predecessor to what is now FL § 5-203(b). 393 Md. at 498. The Court of Appeals concluded:

> This result and this approach are consistent with the primacy of the interests of the child and the courts' paramount concern to secure the welfare and promote the child's best interests. The trial court, in short, whether, or not, it concludes that Mr. Ricketts is entitled to a divorce, has the jurisdiction and power to determine the custody, visitation and support of the Ricketts' children.

*Id.* at 501 (citations and quotation marks omitted).[1]

The case before us is not a divorce proceeding but we can conceive of no reason why the State's interest in protecting the welfare of a child should depend upon the present or former marital status of the parents. Therefore, we think that it is appropriate to extend *Ricketts'* holding to cases in which the parents are not married. *See also* C. Callahan *et al.,* MARYLAND FAMILY LAW § 5-57 (5th Ed. 2011) (*Ricketts* stands for the proposition "that a trial judge is not limited to exercising its equity jurisdiction to determine custody only to those situations where the parents are living separate and apart.").

Moreover, as we have noted, in 2015 the circuit court entered an order granting the parties joint custody over K. The court retains jurisdiction over custody even if the

---

[1] *See also Santo v. Santo*, 448 Md. 620, 637 (2016) (The appropriate approach to the interpretation of FL § 5-203 is "'not whether the General Assembly has *granted* a power, but whether it has attempted to *limit* a power that exists as part of the inherent authority of the court.'"(quoting *Taylor v. Taylor*, 306 Md. 290, 298 (1986) (bracketing omitted, emphasis added in *Santo*).

parents subsequently live under the same roof or if they resume cohabitation.[2] Upon remand, the circuit court must consider the merits of Mr. Holbrook's petition for custody.

**THE JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY IS REVERSED AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

[2] The distinction is explained in *Ricketts:*

> By the phrase "live under the same roof," we mean that the parties are technically living together but are not cohabitating, sharing the same bedroom or engaging in marital relations. "Cohabitation," we have explained, describes a relationship of living together "as man and wife," and connotes the mutual assumption of the duties and obligations associated with marriage. *Gordon v. Gordon,* 342 Md. 294, 308 (1996). *See* Black's Law Dictionary 260 (6th ed. 1990) (citations omitted) ("[t]o live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations.").

*Ricketts*, 393 Md. at 484 n.1.